## ADELIA HARRIMAN *vs.* CITY OF BOSTON.

Evidence that a coal-hole in a sidewalk on a much travelled street of a city and upon the regular beat of the police, was open early in the morning; that it was open at noon, at which time a person fell into it; that the occupant of the premises did not know that it was open, or how it became so; and that it could be opened only from the inside, is evidence sufficient to be submitted to the jury to show, under Gen. Sts. *c.* 44, § 22, that the city had reasonable notice of the defect.

TORT, to recover damages for injuries alleged to have been sustained through a defect in a way which the defendant was bound to keep in repair.

At the trial before *Wells*, J., at September term, 1873, it appeared the defect alleged was an opening in Prince Street, through the sidewalk, into the cellar of a building facing on the street. This opening was surrounded by a stone frame, and was used for taking in coal and wood, and for other uses in connection with the cellar. It was from thirty to thirty-two inches long, from eighteen to twenty inches wide, and about three feet deep. It was admitted that Prince Street, including the sidewalk, was a public way, which the defendant was bound to keep in repair; that it was a thoroughfare leading from Hanover Street to one of the Charlestown bridges, and a street over which there was much foot travel. It was also admitted that there was a plank cover fitted to and used for closing the opening complained of.

The plaintiff proved that while passing over this sidewalk in the daytime, she fell through the uncovered opening, and sustained serious injury. The hour at which the accident occurred

was in controversy, the defendant's evidence tending to show that it was about twelve o'clock at noon, and the plaintiff's evidence tending to show that it was nearly one hour later. The evidence upon the question of the plaintiff's care is not now material.

Upon the question of notice to the defendant of the defect, the plaintiff offered evidence, that on the day before the accident, the occupant of the cellar, who was also the occupant of the store above it, had had the cellar cleaned out; that the opening in the sidewalk was uncovered for that purpose; that laborers were at work all day in the cellar, and that in the afternoon rubbish was brought up through the opening in the sidewalk, and removed in carts. A Mrs. Richardson, who lived in the next house, was called for the plaintiff, and testified, among other things : " This hole the day before was open all day. I saw it opened as early as eight o'clock in the morning, and also in the afternoon. I did not see it closed that night. On the day of the accident, I first saw the hole between seven and eight o'clock in the morning, and it was then open. My little girl, about two years old, went out on to the sidewalk, and I saw her going by this hole, and was afraid she might fall in, and went out and got her. I did not see it closed between that time and the time Miss Harriman fell into it." (Upon inquiry by the court whether she saw it at all between those times, she replied that she did not, or did not remember that she did.) " I saw no one at work about the cellar or the hole on the day of the accident." On cross-examination, she said she could not say that she saw the place later than three o'clock in the afternoon of the day before the accident. The plaintiff offered no further testimony showing that the hole was uncovered on the day of the accident before she fell into it.

On request of the defendant the jury were taken to view the premises, which it was agreed by the counsel for the parties were, at the time of the trial, in the same condition as at the time of the accident. When the jury, with the officers and counsel in attendance, reached the spot, the opening was found covered, and several unsuccessful efforts were made by the officers and by some of the jury to remove the covering from above, but the

cover could not be removed until the counsel for the defendant descended into the cellar and lifted it from below.

The defendant called as a witness the person who occupied the cellar at the time of the accident, who testified that he had employed some men to clean it out the day before the accident; that the job was finished in the afternoon; that he then went into it to see how the job had been done, was satisfied with it, paid the laborers and closed the opening at about six o'clock in the afternoon; that he came to his store at seven o'clock on the morning of the day of the accident, and noticed that the opening in the sidewalk was then covered; that he did not leave his store or see the opening again until after Miss Harriman fell in; that he did not uncover the hole or cause it to be uncovered, or know by whom it was uncovered. There was no evidence contradicting this statement directly; but the plaintiff's counsel contended, upon various grounds developed on the examination and cross-examination of this witness, that his testimony was not to be believed.

The defendant also called a policeman, who testified that the part of Prince Street complained of was in his beat on the night before the accident; that he was on his beat from 8 P. M. to 1 A. M., and passed over Prince Street twice an hour during that time, and did not notice that the opening in the sidewalk was uncovered. In his direct examination the witness testified: "The scuttle was closed; recollected it the next day; heard of the accident; they had been clearing out the cellar." In cross-examination he said, "Couldn't pass without seeing it; didn't see any hole; there was a little dirt opposite, in the street; noticed that." The witness could not, however, swear that he remembered the distinct fact that he took notice that night that the scuttle was closed.

The defendant also called the policeman who was assigned, from 8 A. M. to 1 P. M. on the day of the accident, to the beat which included Prince Street. This witness testified that he was engaged in court on that day from 9 A. M. till 12 M., and he could not say he was in Prince Street at all until after the accident. He did not know the scuttle had been open that day

There was no evidence that any other policeman was assigned to his beat during his absence. Both policemen, on cross-examination, testified, against the defendant's objection, that their duty required them to go over every part of this beat at least once during every hour of their respective tours of duty, and that the beat was short enough to admit of their doing so; and also that, if they had noticed this hole uncovered, they would at once have covered it or caused it to be covered, and that that was a part of their duty. The policeman on the beat embracing Prince Street, between 1 A. M. and 8 A. M. of the day of the accident, if there was any, was not called.

The defendant offered no evidence that the opening was covered at any time between the time when the plaintiff's witness testified to seeing it open in the morning of the day of the accident and the time when the plaintiff fell into it, and there was no evidence upon that point, except as above stated. The plaintiff did not claim that any actual notice of the existence of the defect was received by the chief of police or at his office.

The case was submitted to the jury, who were unable to agree upon a verdict; and the case was reported to the full court by consent of parties. If the court should be of opinion that the evidence would not warrant a jury in finding a verdict against the defendant, then judgment was to be entered for the defendant; otherwise the case was to stand for trial.

*L. S. Dabney*, for the plaintiff.

*J. L. Stackpole*, for the defendant.

COLT, J. The question of principal difficulty which has been here discussed, and upon which the case seems to have turned, relates to the sufficiency of the evidence to charge the defendant with notice of the alleged defect. Under our statute, if the defect has not existed for twenty-four hours, the plaintiff must show that the defendant had reasonable notice of it or fail in his action. What is meant by reasonable notice is not defined. By the St. of 1786, *c.* 81, reasonable notice was for many years the condition upon which towns charged with it were subject to double damages for injuries of this description. In an early case, in answer to the argument that it must be notice similar

to that which the law requires in the service of a writ, or at least notice to the surveyor or to some principal inhabitant, it was said by this court, that towns were bound to take notice of and guard against open and visible defects and such as could be prevented by common and ordinary diligence. *Lobdell* v. *New Bedford,* 1 Mass. 152. So in *Reed* v. *Northfield,* 13 Pick. 94, 98, it was held that notice of a defect might be inferred from its notoriety and from its continuance for such length of time as to lead to the presumption that the proper officers of the town knew, or with proper vigilance and care might have known the fact. Changes have from time to time been made in the law imposing this liability, but the phrase " reasonable notice," as applied to defects which have not existed for twenty-four hours, is still retained, and has received the same construction in the more recent cases. The distinction is observed between actual and constructive notice, between direct evidence of notice and circumstantial evidence tending to prove it, and in all the cases notice proved in either mode is held sufficient. *Donaldson* v. *Boston,* 16 Gray, 508. *Howe.* v. *Lowell,* 101 Mass. 99. *Ryerson* v. *Abington,* 102 Mass. 526.

A majority of the court, under this interpretation of the statute and upon the evidence here reported, are of opinion that on the question of notice the plaintiff has the right to go to the jury.

The trap door of a cellar-way projecting into the sidewalk of a city, into which the plaintiff falls at noon, is proved to have been opened early in the morning. There is no evidence of any purpose for which it was opened on that day, or of any use made of it, as a passage-way to or from the cellar. On other occasions it was used by the occupant of the store above for taking in coal and wood, and for other access to the cellar. There was evidence that the door when shut could be raised only from the inside. The occupant of the store testified that he did not open the door himself, or cause it to be opened, or know by whom it was opened on the day of the accident. There was no direct evidence as to whether it was open or closed between the time when it was seen open in the morning and the time of the accident. But we cannot say under all the circumstances that the plaintiff may not

well rely on the presumption of continuance in establishing the fact that it did remain open and did continue a visible defect in the sidewalk for the time named. The weight of that presumption in any case must vary with the nature of the defect proved, and according to its permanent, or temporary and changeful character. The cellar door of an occupied building, seen open for actual use, and properly guarded by a person in charge, might furnish no ground for inference that it remained open when its use ended, while such a door in a vacant building, found open without reason, with no one in charge, might fairly be presumed to have continued open until shown to have been closed. And in the case here reported, there is no principle of law which precludes the jury from finding as a matter of fact, that this trap door was left open, as the plaintiff contends.

We cannot say as matter of law, in view of the nature, duration, exposed position and dangerous character of this defect, in connection with the duty which may fairly be imposed upon the officers of the city, that there is not enough shown to warrant the jury in finding that the proper officers of the city, whose duty it is to attend to municipal affairs, either knew or with proper vigilance and care might have known of it in time to have prevented by reasonable effort the injury complained of.

The circumstances which in any case will be sufficient in law to charge the defendant with implied or constructive notice cannot be stated in advance. When there is any evidence which can fairly be relied on, the question is for the jury, to be decided by them upon inferences of fact, in view of the duties which in their judgment may be fairly imposed upon the officers of cities and towns under the infinitely varied features of each case.

The refusal of the court to take the case from the jury can in no case be construed as an indication that the finding should be for the plaintiff. It is often the duty of the court to submit a question of fact to the jury upon the plaintiff's request, when the preponderance of evidence may appear to be against him.

*Case to stand for trial.*