## MARGARET I. WELSH *vs.* INHABITANTS OF AMESBURY.

Essex.   November 3, 1897. — March 1, 1898.

Present: HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Law and Fact — Due Care a Question for the Jury.*

In an action for personal injuries occasioned to the plaintiff by falling on a sidewalk of the defendant town, it is a question of fact for the jury whether, in view of all the circumstances disclosed by the evidence, the plaintiff was in the exercise of due care; and whether the sidewalk was in a defective condition, and whether the defendant had reasonable notice of the defect (if there was one) or with proper care and diligence ought to have known of it, are also questions of fact for the jury, who are entitled to consider the nature of the alleged defect, the amount of travel over the place where the accident occurred, its nearness to the business portion of the town, and such other circumstances as will tend to throw light on the questions at issue.

TORT, for personal injuries occasioned to the plaintiff while walking on the sidewalk of Market Street in the defendant town.   Trial in the Superior Court, before *Dunbar,* J., who allowed a bill of exceptions, in substance as follows.

The place of the alleged defect was in front of a bank building, and the defect alleged was an accumulation of snow and ice.   Notice of the time, place, and cause of the injury was duly given.

The plaintiff testified that, on March 3, 1896, she was walking down Market Street on the sidewalk on the easterly side; that when she arrived in front of the bank building she slipped, and both feet came from under her, and she fell down; and that the ice where she fell was very slippery and hubbly, and that it had not been sanded.

One Cooper, a physician, called as a witness by the plaintiff, testified that his office was nearly opposite the spot where she fell; that he was called to attend her, and, at about half past six that same afternoon, he examined the place where she fell. He stated that " the sidewalk at the spot was covered with ice or trodden snow as hard as ice, so that footprints or heelprints made no impression on it; that the night before it had snowed in the vicinity of four inches or four and a half inches on a level,

a damp snow, and the pedestrians travelling through that damp snow had made a path, and, clearing off colder in the night, it had frozen; that when the snowplough came along in the morning over this, it just scraped off the snow out on either side of the trodden path that was loose, and somebody during the day had cleared off the snow between the path and the curbstone and between the path and the bank building with a snow shovel, leaving a rounded over ridge or layer of trodden snow varying in thickness from almost nothing on the margins to an inch and a half or two inches in the middle; that this ridge was rough from the indentation of footheels made the night before, before it had frozen." He also testified that the sidewalk had not been sanded, but that he saw it sanded about five minutes after she fell; that the day before the injury it rained hard before it snowed; that on the day of the injury it was cold and blustering; and that in the afternoon of the day of the injury, between twelve and three, there was a time when little flurries of snow fell from scuds from clouds floating over, but that it did not form any snow to any depth.

The plaintiff called other witnesses, who testified that, when they passed over the place just before the plaintiff received her injuries, the ice thereon was very rough, hubbly, and slippery, one of them testifying that it looked like a place raised in the sidewalk, and another that it was a ridge; and all testifying that they could not tell how thick the ice was, and that the place had not been sanded.

The testimony of the plaintiff's witnesses tended to show that the day before the injury there had been a severe rain, followed by a damp snow and freezing weather before the following morning. None of the witnesses excepting Cooper had noticed the place earlier than half an hour prior to the time when the plaintiff fell; and he testified that there was no snow on the sidewalk the day before the accident prior to the snowfall.

There was also evidence tending to show that the place was about fifty feet from Market Square, the principal business square in the town, which contained about ten thousand inhabitants; that there were stores on both sides of Market Street; that there were a savings bank and a national bank in the bank building; and that the travel over the place in question was as great

as anywhere in the town. It was admitted that the sidewalk was a well constructed brick sidewalk, level, seven feet and two inches wide, with nothing unusual or defective in its construction.

The defendants introduced evidence tending to show that the place in question had been sanded on the morning of March 3, and that it was sanded at the time of the accident. One Brown testified that he examined the sidewalk immediately after the affair, and that he found it sanded, and that the ice might have been from one to two inches high in the centre of the sidewalk, falling off to bare bricks; that the coating started near the centre of the sidewalk, and was up as high as two inches, while some places were clear down to the bare bricks, and that there was a margin of three feet on the outside of the walk, and perhaps eighteen inches next to the building.

One Morrill, janitor of the bank building, testified that he cleared the sidewalk of all the snow that would come off with an iron shovel pointed with an iron band, on both March 2 and 3; that there was sand on the walk at the place in question on the morning of March 3; that he used the shovel in the morning, and again at about a quarter of three in the afternoon; and that there was frozen slush on the sidewalk which, without measuring, he would say was an inch high in the centre and then off on both sides.

One Quimby, who testified that he had kept a record of the weather for a number of years, stated that on March 2 the temperature ranged from thirty-six degrees above in the morning, to twenty-eight degrees above at night; that it was snowing at 5.20 P. M., and continued snowing through the evening, and a gale was blowing all night; that on the morning of the 3d it was twenty-three degrees above, the wind was northwest, and it was cloudy; that it snowed between 8.10 A. M. and 11 A. M., and an inch and a half of snow fell; that at 2.30 P. M. there was a snow squall, and it was blowing a gale and drifting. He also testified that the rainstorm on March 2 was very severe, there being a great freshet in the Merrimac River, and the town was in darkness on the night of the 2d because high water prevented the running of the electric light plant.

The defendant requested the judge to rule that the plaintiff

was not entitled to recover, and to direct a verdict for the defendant. The judge refused so to rule; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. T. Choate & A. W. Reddy, Jr.*, for the defendant.

*B. B. Jones & M. A. Pingree*, for the plaintiff.

MORTON, J. The defendant requested the court to rule that the plaintiff was not entitled to recover, and to direct a verdict for the defendant. The court refused to do so, and the only question is whether the ruling which the defendant requested should have been given. We think that it should not have been, and that the ruling of the court was right.

It was a question of fact for the jury whether, in view of all of the circumstances disclosed by the evidence, the plaintiff was in the exercise of due care. It cannot be said, as matter of law, that she was careless in being where she was, or in attempting to pass over the sidewalk in the condition in which it was, or that she assumed the risk in doing so. *Gilman* v. *Boston & Maine Railroad*, 168 Mass. 454. *Calkins* v. *Springfield*, 167 Mass. 68. *Warren* v. *Boston & Maine Railroad*, 163 Mass. 484, 488. *McGuinness* v. *Worcester*, 160 Mass. 272.

Whether the sidewalk was in a defective condition, and whether the defendant had reasonable notice of the defect (if there was one) or with proper care and diligence ought to have known of it, were all questions of fact for the jury, who were entitled to consider the nature of the alleged defect, the amount of travel over the place where the accident occurred, its nearness to the business portion of the town, and such other circumstances as would tend to throw light on the questions at issue. *Howe* v. *Lowell*, 101 Mass. 99. *Street* v. *Holyoke*, 105 Mass. 82. *Morse* v. *Boston*, 109 Mass. 446. *McAuley* v. *Boston*, 113 Mass. 503. *Harriman* v. *Boston*, 114 Mass. 241. *Bingham* v. *Boston*, 161 Mass. 3.

*Exceptions overruled.*