City of Vincennes *v.* Thuis.

---

## CITY OF VINCENNES *v.* THUIS, ADMINISTRATOR.

[No. 3,584.    Filed March 19, 1902.]

NEGLIGENCE. — *Municipal Corporations.* — *Evidence.* — In an action against a city for the death of plaintiff's decedent it was alleged in the complaint that decedent was traveling on a street, at night, in a buggy, as the guest of another; that there was a high ridge in the center of the street, by reason of a water main having been recently laid therein, and stumps and piles of rubbish had been permitted to remain in the street; that the city had erected a water plug projecting three feet from the ground in the traveled way; that the buggy struck the hydrant and threw decedent out and injured him, from which injuries he died. The evidence showed that decedent and the driver were intoxicated, and were driving at a rapid rate of speed when they struck the hydrant; that the hydrant was properly located at the line of the street and sidewalk, and was about twenty feet from the ridge in the center of the street; that the stump had been passed in safety and the brush pile had not been reached when the accident occurred. *Held*, that the evidence was insufficient to support a judgment for plaintiff.  *pp. 524–530.*

City of Vincennes *v.* Thuis.

MUNICIPAL CORPORATIONS.—*Failure to Light Streets.*—It is not neg-
ligence *per se* for a city to fail to exercise its authority, conferred
upon it by law, to light its streets. *p. 528.*

From Knox Circuit Court; *G. W. Shaw*, Judge.

Action by F. A. Thuis, administrator, against the city
of Vincennes for damages for death of Theodore Thuis
resulting from the alleged negligence of defendant. From
a judgment for plaintiff, defendant appeals. *Reversed.*

*John Wilhelm*, for appellant.
*W. A. Cullop* and *C. B. Kessinger*, for appellee.

WILEY, J.—Appellee's decedent was thrown out of a
buggy by coming in contact with a water plug or hydrant
while driving through one of the public streets of appellant
city, was injured thereby, and from which injuries he died.
This action was to recover damages for thus causing his
death. The complaint was in a single paragraph, to which
a demurrer was addressed and overruled. Answer in de-
nial, trial by jury resulting in a verdict for appellee in the
sum of $2,500. Appellant's motion for a new trial was
overruled and judgment rendered on the verdict.

Appellant relies for a reversal upon the overruling of
its demurrer to the complaint and its motion for a new trial.
The complaint avers that the decedent was traveling on St.
Clair street in appellant city, at night, in a buggy with one
Dr. Beard, whose guest he was; that said street was badly
out of repair, on account of the negligence and carelessness
of appellant; that it had a high, soft ridge in the center, by
reason of the water main for said city having been recently
laid therein, which ridge caused persons traveling on said
street, in conveyances, to drive to the sides of the same;
the appellant had also permitted high and large stumps,
and large piles of rubbish to be and remain in the street
where the accident to decedent occurred; also the appellant
had permitted water plugs to be erected along and in the
street which projected three feet above the ground and in
the traveled way and where decedent was injured; that

while said Beard was traveling along said street, in a prudent and careful manner, at a point near where one of said water plugs was located, and near where said brush pile and rubbish, said ridge, and said stump were allowed to be and remain, in the darkness of the night, when he was unable to see such objects on account of the darkness, the buggy in which said Beard and decedent were riding was run violently against said plug, throwing decedent out and injuring him, from which injury he died; that said street was not lighted, and that said injuries were inflicted on account of said obstructions in said street, and by not properly fencing off said water plug to prevent vehicles from running against the same at night, and in failing to have said street properly lighted so that travelers could see how to pass along the same, and in not having a danger signal maintained at said plug so as to prevent persons using the street from colliding therewith. It is also charged that appellant knew of the dangerous condition of said street, and that appellee and his decedent had no knowledge thereof; that said conveyance was carefully and prudently driven; and that the decedent's injuries occurred without any fault or negligence on the part of appellee or his decedent. The complaint shows that the decedent left surviving him as his only heirs his widow and children.

A vigorous assault is made against the sufficiency of the complaint, but, under the facts disclosed by the record, we are of the opinion that appellee can not recover, and hence we do not need to determine the sufficiency of the complaint. While several reasons are assigned for a new trial, they are all waived except the sufficiency of the evidence to support the verdict, and the giving of certain instructions.

A brief statement of the material facts, as disclosed by the evidence, is important. St. Clair street, upon which the decedent was traveling when injured, runs in a southeasterly direction parallel with the Wabash river. It had

been established as a street for eight years, but was never graded or otherwise improved. No sidewalks had been constructed, and there were no gutters or curbing to indicate the line of roadway for vehicles and sidewalks for footmen. The street had never been lighted by the city, but had been used for travel to some extent. In the autumn of 1898, the water company by authority of the city had laid a water main about in the center of the street, and at the point where it intersects Short street, a water plug or hydrant had been located. This hydrant was of the usual size, shape, etc., and was located at the dividing line between the sidewalk and roadway, when the street would have been improved. This particular hydrant was located at a proper place, corresponding to the location of all other hydrants in the city. When the hydrant was located and placed in position, two posts were set into the ground to protect it from being run against by passing vehicles. Prior to its location, the public had been using the street as a drive way at or near where it was placed. In this street were some stumps and a brush pile. There was one stump about twenty-five feet from the hydrant, and the brush pile about twenty feet, but in another direction. There was a small ridge where the water main had been laid, from four to six inches high. On the day of the evening appellee was injured, he had been working at a road house, or saloon, near the Wabash river, and about half a mile from where the accident occurred. In the afternoon, before six o'clock, one Dr. Beard, went to this road house, where he remained until dark, and where he drank intoxicating liquors. Just about dark he was about to leave the road house, and asked the decedent to ride with him into town. They got into the buggy and drove at a rapid gait. They drove the river road, where it was smooth and good, and turned into St. Clair street. When they reached St. Clair street it was so dark they could not distinguish inanimate objects in the street. They could not see the stumps, the brush pile, or hydrant. The

City of Vincennes v. Thuis.

evidence tends strongly to show that they were both intoxi-
cated. Dr. Beard knew that there were stumps, a brush
pile, and other obstructions in the street, but testified that
he did not know of the hydrant being there. No witness
states with any degree of accuracy the rate of speed they
were driving, but several witnesses stated that they were
going very fast, and Dr. Beard himself states he was driving
fast when the buggy struck the hydrant, although he had
somewhat checked the speed of his horse when he turned
into St. Clair street. The evidence shows that the dece-
dent had lived in Vincennes many years, but the record is
silent as to what knowledge, if any, he had of the condition
of the street, or what, if any thing, he did to protect him-
self from the rapid and reckless driving of his companion,
of which he could not have been ignorant. The stump
that was about twenty-five feet from the hydrant had been
passed in safety before the accident, and the brush pile had
not been reached. The hydrant was about twenty feet from
the little ridge in the center of the street. The hydrant
with which the buggy collided was about a half a mile
from the road house where they started. When driving
in the manner indicated, and when it was so dark that per-
sons in a buggy could not see the stump, brush pile, or hy-
drant, the buggy collided with the hydrant, and threw the
occupants violently to the ground. The decedent was ren-
dered unconscious, and never regained consciousness. As
some indication of the speed they were driving, it is perti-
nent to say that the buggy was completely demolished; that
no attempt was made to repair it; the horse was stripped
of its harness, and the latter so badly broken that it was
practically worthless. The above is a substantial statement
of the facts upon which the decision must rest.

In view of such facts, it may be well to summarize the
acts of negligence pleaded and relied upon, viz.: (1) The
ridge of earth in the street over the water main; (2) allow-
ing stumps and brush to be and remain in the street;

(3) placing the hydrant in the street and failing to fence it; (4) failure to light the street; and (5) failure to have a light or signal at the hydrant. It is quite evident, under the facts, that neither the ridge in the street, the stump, nor the brush pile, in any manner caused or contributed to the accident. The hydrant was in its proper place, and the city had a right to place it there. It is not negligence *per se* for a city to fail to exercise its authority, conferred upon it by law, to light its streets. Elliott, Roads and Streets (2nd ed.), 623; *Randall* v. *Eastern R. Co.*, 106 Mass. 276, 8 Am. Rep. 327; *Macomber* v. *City of Taunton*, 100 Mass. 255; *City of Freeport* v. *Isbell*, 83 Ill. 440, 25 Am. Rep. 407; *Canavan* v. *City of Oil City*, 183 Pa. St. 611, 38 Atl. 1096; *Oliver* v. *City of Denver*, 13 Col. App. 345, 57 Pac. 729. A municipal corporation, being public and sovereign in nature, is not liable to be sued for a failure to exercise such powers entrusted to the judgment and discretion of its proper authorities, or for errors committed in their exercise. *Brinkmeyer* v. *City of Evansville*, 29 Ind. 187. So that a failure to light the street is not a sufficient charge of negligence to render the city liable. The failure of the city to put a fence around a water hydrant, when such hydrant is properly located, can not render the city liable. In the present instance, and possibly in all, the fence would be a more dangerous obstruction than the hydrant.

· While it may be negligence on the part of a city to permit obstructions, such as stumps and brush piles, and a ridge of earth from four to six inches high to remain in one of its public streets, it would not, on account thereof, be liable for damages to a traveler which resulted from another cause, and to which they did not contribute.

In this case Dr. Beard, who owned the horse and buggy, and · who was driving when the accident to the decedent occurred, does not claim or state in his evidence that either of the obstructions just mentioned caused the buggy to run against the hydrant. And

it is evident, from all the facts, that they did not, for the stump had been passed safely; there was plenty of space between it and the hydrant for the buggy to pass; the brush pile had not been reached, and the ridge was nearly twenty feet away. The cause of the accident was the rapid gait at which the horse was being driven, and the reckless disregard of life and safety manifested by the driver, and coming in contact with the hydrant. He knew of all the obstructions in the street, except the hydrant which was rightfully there, and knew that the night was so dark that such obstructions could not be seen; yet with a knowledge of such facts he drove through the street at a high and reckless rate of speed, and must have known that if his buggy should come in contact with a solid and stationary object, such as a stump, serious results might follow. The decedent also must have known the certain result of such collision, and tacitly, at least, acquiesced in the conduct of the driver. It is true that where one accepts an invitation to ride with another in his vehicle, as his guest, without any authority to control or direct the movements of the driver, and without any reason to doubt that the driver is skilful and competent, the negligence of the owner or driver will not be imputed to the guest so as to deprive him of the right to compensation from one whose neglect of duty has resulted in his injury. *Lake Shore, etc., R. Co.* v. *Boyts,* 16 Ind. App. 640; *Aurelius* v. *Lake Erie, etc., R. Co.,* 19 Ind. App. 584; *Louisville, etc., R. Co.* v. *Creek,* 130 Ind. 139, 14 L. R. A. 733; *Board, etc.,* v. *Mutchler,* 137 Ind. 140; *Lake Shore, etc., R. Co.* v. *McIntosh,* 140 Ind. 261.

But, notwithstanding this rule, it is as much the duty of the guest to use reasonable care and judgment to learn of and avoid danger as it is the duty of the driver. *Lake Shore, etc., R. Co.* v. *Boyts, supra.* In the latter case, this court, by Robinson, J., said: "But even if the negligence of the driver, * * * can not be imputed to the appellee, * * * the appellee must still show that he was

State, *ex rel.*, *v.* Stockwell.

free from negligence contributing to his injury. And the same rule would not apply where the guest was riding inside a closed carriage without opportunity to discover danger and inform the driver of it that would apply where the guest was seated at the driver's side, and had the same opportunity with the driver to discover and avoid danger. *Brickell* v. *New York, etc., R. Co.*, 120 N. Y. 290, 24 N. E. 449, 17 Am. St. 648. Although he may be simply a guest, if he has the opportunity to do so, it is no less his duty than it is the duty of the driver when approaching a railroad crossing, to look and listen and to learn of danger and avoid it if practicable."

While the rule there declared was with reference to the duty of a traveler approaching a railroad crossing, it is nevertheless applicable here. The decedent was sitting by the side of Dr. Beard, and had equal opportunity with him to discover and avoid danger. He had equal knowledge, also with him, that it was very dark, and that they were driving at a rapid, dangerous, and reckless rate of speed, considering the darkness of the night and that the street was unlighted.

To travel upon an unimproved street where inanimate objects, if any, in the street, could not be seen, on account of darkness, and at such a reckless rate of speed as shown by the evidence, is such negligence itself as will preclude a recovery.

Judgment reversed, and the court below is directed to sustain appellant's motion for a new trial.