### MARIA C. BENNETT *vs.* CITY OF EVERETT.

Middlesex.    February 26, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Way*, Defect in highway. *Negligence*.

In an action by a woman against a city for injuries from falling into an unguarded trench crossing the sidewalk of a highway of the defendant on which the plaintiff was returning home about half past eight o'clock on an evening in September, there was evidence that the street was dark and shaded by trees, that the trench had been dug on the morning of the day of the accident by a drain layer under a permit from the defendant, that it extended from the middle of the street completely across the sidewalk on which the plaintiff was walking, that there was a pile of earth extending from the middle of the sidewalk to the curbstone and running out into the street, that there were two lanterns in the centre

of the street and one upon a piece of drain pipe on a pile of earth on the sidewalk on the other side of the trench from the plaintiff but there were thick branches of a tree between this lantern and the plaintiff, that on the side of the trench from which the plaintiff was approaching there was no light on the sidewalk and there were no barriers on the sidewalk on either side of the trench, that the plaintiff supposed that the lights about the trench were merely signals to prevent teams from coming into the street and supposed that the pile of earth upon the sidewalk had been shovelled there from the street, that she looked, and putting her foot down found the surface to be hard, and, thinking that there was a clear portion of the sidewalk between the pile of earth and the fence on the other side of the sidewalk, attempted to walk there and stepped into the trench and was injured. The place of the accident was within four or five minutes walk of the city hall in the centre and business part of the city. *Held*, that there was evidence of the plaintiff's due care, and evidence that the accident was caused by a defect in the highway of which the defendant had notice or by the exercise of proper care and diligence might have had notice.

TORT against the city of Everett for personal injuries caused by an alleged defect in Waverley Street, a public highway of that city. Writ dated September 18, 1903.

At the trial in the Superior Court before *Hitchcock*, J. it appeared that Waverley Street was a public highway in Everett and that due notice of the time, place and cause of the injury was given to the defendant. There was evidence that under authority of a permit obtained from the city a day or two before the accident one Henderson, a licensed drain layer, had opened a trench on the morning of the day of the accident for the purpose of making sewer connections with a house on Waverley Street, that the trench extended from the middle of the street across the sidewalk, and was about two feet wide and about three feet deep; that Waverley Street was forty feet wide and the sidewalk at the place in question was seven and one half feet wide, the street being twenty-five feet wide from curb to curb.

The plaintiff testified, in direct examination, that she lived at 58 Morris Street in Everett, and that on September 1, 1903, she went to Forest Avenue in that city on business; that upon returning to her home after dark she came along a street called Buckman Street and walked along that street until she came to Waverley Street; that she proceeded along Waverley Street on the left hand side toward Warren Street; that she saw dirt on the sidewalk; that she came to the dirt and stopped and looked, and as she " looked down the dirt and passed the dirt, it looked like a sidewalk six or seven feet "; and when she looked

across the street there was a heavy lot of dirt in the street, from which she supposed that work was doing there and that they had shovelled the dirt out on the street and upon the sidewalk to get rid of it; that she stepped toward the fence, that it looked hard, and she put her foot there and it appeared hard, that "the other sidewalk looked all good," and the first thing she knew she was down in the trench; that it looked just like a clear sidewalk, so she " stepped by the dirt to come on there, and was all right," and as she went along the first thing she knew she " was down in the trench about three feet"; that on the sidewalk where she stood there were no lights, but across the opening there was one light; that it was on a piece of piping; that the piping stood on end on the dirt, which carried it up, and the lantern was up high on the piping; that the pile of dirt upon which was the light was about two feet high, that the piping was about three feet high and the lantern was on top of that; that there was a tree right at the end of the opening on the opposite side from where she stood; that the trunk of the tree was near the curbstone; that it was a thick leafed, heavy tree; that it shaded the opening very much and the limbs spread across the sidewalk; that the lantern on the drain pipe was near the tree on the opposite side of the trench and that it stood on the dirt about a foot from the tree and the piping was under the branches of the tree; that there were other lights about there, though not on the sidewalk, and no barriers on the other side of the trench; that the dirt ran out into the street and there was quite a body of dirt in the street and that there were two lanterns in the centre of the street, but she could not say just how they were placed; that the place of the accident was about four or five minutes' walk from the city hall; that the city hall is in the centre of the town, in the business part of the town.

On cross-examination she testified that she had been on Waverley Street a great many times and that she had a cousin living on each side of the street a little beyond where the opening was; that when she first came into Waverley Street or Buckman Street she saw lights in the street; and as she looked she did not know the street, and it looked like a very dark street and shaded with trees, and she thought it was a signal put up for teams not to go down there; that she

stepped right straight into the trench and did not stumble, that she tried the dirt with her foot and it seemed hard ; it looked as though people had walked that way, that is, in a path which she thought was between the dirt and the fence, that was at the end of the opening, and then the opening ran through to the curbstone ; that the opening looked like a sidewalk to her; that it was not a brick sidewalk but an ordinary dirt sidewalk, and, as it was shaded, it looked alike, that as she looked down it looked to be a good sidewalk six or seven feet past, beyond.

At the conclusion of the evidence the defendant asked the judge to rule, that upon all the evidence the action could not be maintained, and that a verdict should be directed for the defendant; also that there was no evidence that the plaintiff was in the exercise of due care and therefore that she could not recover.

The judge refused to make these rulings and submitted the case to the jury. The jury returned a verdict for the plaintiff in the sum of $900 ; and the defendant alleged exceptions.

*W. S. Thompson,* for the defendant.

*A. J. Daly & F. J. Carney,* for the plaintiff.

SHELDON, J. There was sufficient evidence to be submitted to the jury of the plaintiff's due care. Looking at the state of facts then existing, considering the things which she saw and the inferences which she ought to have drawn from them, the jury were warranted in finding this issue in her favor. Indeed, the counsel for the defendant has made no argument against this proposition. So far as it depends upon this part of the case, the defendant's exceptions cannot be sustained. *Leonard* v. *Boston,* 183 Mass. 68. *O'Neil* v. *Hanscom,* 175 Mass. 313. *Fox* v. *Chelsea,* 171 Mass. 297. *McGuinness* v. *Worcester,* 160 Mass. 272. *Norwood* v. *Somerville,* 159 Mass. 105.

It is not denied that there was evidence of an actionable defect in the sidewalk ; but it is earnestly contended that there is no evidence that the defendant had notice, or by the exercise of proper care and diligence might have had notice, of the alleged defect. The defect consisted of a trench dug across the sidewalk of a public street. The defendant had issued a permit to dig the trench a day or two before the accident. The actual digging began on the morning of the first day of September;

and the accident occurred about half past eight o'clock in the evening of the same day.   The work to be done under the permit would create of necessity a dangerous defect in the street and sidewalk.   It is not a violent presumption that the officers having charge of the streets would have early notice of the issuing of such a permit.   The jury also had a right to consider whether this defect, a trench dug transversely across the sidewalk, was not of such a nature that the defendant's officers would have been likely to receive immediate notice of its existence.   *Harriman* v. *Boston*, 114 Mass. 241.   *Donaldson* v. *Boston*, 16 Gray, 508.   The place of the accident was within four or five minutes' walk from the defendant's city hall, in the centre and business part of the city.   It cannot be said that the only defect was a failure to guard the trench by lights or barriers. The trench itself constituted a defect in the sidewalk, though under the circumstances the city would not be liable for the existence of this defect if it used proper care to protect the public against the danger by sufficient barriers.   *Torphy* v. *Fall River*, 188 Mass. 310.   We are of opinion that this question also properly was submitted to the jury.   *Welsh* v. *Amesbury*, 170 Mass. 437, 440.

As the issues already stated appear to have been found in favor of the plaintiff, the defendant's liability depends upon whether reasonable care had been used to protect the public by barriers against the excavation which had been temporarily made.   *Jones* v. *Collins*, 188 Mass. 53, and cases there cited. The way had not been actually closed to public travel; but a trench had been opened in the middle of the street, running thence across half of the street and the whole of the sidewalk in question.   The duty accordingly devolved upon the defendant of putting up proper fences or barriers to guard against the danger thus created; and if it chose to delegate the duty to Henderson the drain layer, it could be liable to any one injured by his negligence in this respect.   *Blessington* v. *Boston*, 153 Mass. 409.

No question is raised as to the sufficiency of the lights put up in the driveway; but there is contradictory evidence as to the situation of the two pieces of drain pipe placed by Henderson, one on each side of the trench, whether they were in

the middle of the sidewalk or close to the curbstone, and as to the character and extent of the ridge of earth thrown up on the sidewalk. There was no question that no light had been placed on the sidewalk upon the side from which the plaintiff approached the trench. Without going over the evidence, we think that the jury might have found that the plaintiff reasonably supposed the lights about the trench to be merely a signal for teams not to come into the street; that when she came to the trench she saw merely a pile of earth thrown up, extending from the middle of the sidewalk to the curbstone; that the lantern on the other side of the trench was burning dimly, that her view was obscured by the thick branches of a tree and a building; that she saw no piece of drain pipe or other barrier; that there was no real barrier across the sidewalk, and no sufficient warning that an excavation had been carried across the sidewalk; and that she was justified by the appearance of things in thinking that she could walk safely between the pile of earth and the fence which marked the outer limit of the sidewalk. See *Leonard* v. *Boston*, 183 Mass. 68, in which the circumstances were almost the same as in the case at bar. We think that this question was for the jury. *White* v. *Boston*, 122 Mass. 491. *Jones* v. *Collins*, *ubi supra*. *McMahon* v. *Boston*, 190 Mass. 388. There were no such barriers here as in *Martin* v. *Chelsea*, 175 Mass. 516, or in *Butman* v. *Newton*, 179 Mass. 1.

No other questions have been raised before us.

*Exceptions overruled.*