## Village of Hennepin v. Alice Coleman, Administratrix.

### Gen. No. 4,766.

1. STREETS—*duty of municipality with respect to condition of.* It is the duty of cities and villages to use reasonable care to keep their streets in a reasonably safe condition for public travel, and free from obstruction, but they are not insurers against accident to those using them. It is not necessary that a street should be absolutely free from imperfections in order to relieve the cities and villages of liability. Reasonable care and reasonable safety is all that the law requires of cities and villages.

2. STREETS—*when instruction as to duty of municipality with respect to condition of, erroneous.* An instruction upon this subject which invades the province of the jury and takes away from the consideration of the jury certain facts which bear upon the question of the exercise of reasonable care by the municipality, is erroneous.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Putnam county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed March 13, 1907. Rehearing denied and opinion modified April 10, 1907.

J. E. TAYLOR and WINSLOW EVANS, for appellant.

BARNES & MAGOON and J. L. MURPHY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by appellee in the Circuit Court of Putnam county to recover damages for the death of appellee's intestate, John Francis Coleman, a child of about five years, who was killed by a runaway team in the village of Hennepin, on the 18th day of September, 1905.

The declaration charged in substance that appellant, the village of Hennepin, was possessed of, and had control over, a certain public street known as Second street, with a public sidewalk or footway laid along and near the western line of said street; and that it was its duty to keep and maintain said street and sidewalk reasonably free and clear of impediments and obstructions to travel and in a proper and suitable condition for persons using ordinary care to travel thereon with safety; and alleged that it negligently permitted certain dangerous obstructions, impediments and conditions to exist along a part of said street and sidewalk, and averred that John Francis Coleman, while walking along said sidewalk, in the exercise of due care for his own safety, was unavoidably struck by a team of runaway horses, receiving injuries thereby which resulted in his death. There was a plea of the general issue, a trial by a jury, a verdict for appellee for $1,000, a motion for a new trial overruled, judgment on the verdict and this appeal to review such judgment.

The evidence shows the village of Hennepin to be a place of about 400 inhabitants, situated on the east side of the Illinois river. High street, the main street in the village, runs east from the river and is crossed by a street sixty-six feet wide, running north and south, called Second street, along the center of which is a gravel track about ten feet wide. The part of Second

street south of High street is only two or three blocks in length, little used by the public, with only a few families living on it. A block south of High street, Second street is crossed by another street, and between the two is an alley. Between the alley and the street south of it is a deep gully crossed by a passageway sixteen feet wide, formed by the filling in above some large tiles, which is used by both teams and foot passengers. At the time of the accident, a peach tree stood in the street, on the west side, between the alley and the gully, and this had been enclosed with a wire netting six or seven feet high extending from an ice house standing close to the street line to posts in the street, then to another post near the street line, and from there back to the ice house, making an enclosure extending into the street about thirteen feet. Between this wire fence and the traveled street, was a space described by witnesses as from four to eight feet wide. The ground about this tree was somewhat higher than its surroundings, and on the opposite side of the street was a low spot filled in with debris.

On the morning of the accident, a farmer was unloading potatoes at the side of the store on the southwest corner of High and Second streets, and his horses became frightened at a band that was playing near and ran south on Second street. Appellee was walking north on this street with her five year old boy and a baby in a go-cart, at the time. She had passed the gully and was proceeding along the foot path near the wire fence when the runaway team approached her. She testified that she got in the corner between the wire fence and the ice house north of the tree with her children, but that she did not stay there but started to go around to the south side of the enclosure, and while so doing the boy was struck by the team and killed. She also testified that the wire fence had been up about two months and that she had passed it nearly every day during that time. The proof showed that the boy left his mother and started to run across the street in front of the approaching team.

The trial court gave the jury the following instruction on behalf of the appellee:

"If you believe from the evidence that the place in question had for a long time prior to and down to the time of the occurrence in question, been, and at the time in question was, a public street of said village open to and used by the public for travel and passage thereon, then it makes no difference in the issues involved in this case, whether said street had been and was at the point in question traveled by many persons and conveyances, or by only a few persons and conveyances; or whether it was a much used street or a little used street; it was the duty of the defendant before and down to and at the time in question, to have used reasonable care and diligence to keep and maintain said street for its entire width in a reasonably safe and fit condition for use and travel by all persons exercising ordinary care for their safety."

Whether said street had been and was at the point in question traveled by many persons and conveyances, or by only a few persons and conveyances, or whether it was a much used street or a little used street, were facts which, together with all the other facts and circumstances in evidence, should have been submitted to the jury to be considered by them in determining whether the street was reasonably safe for public travel. These facts were excluded from their consideration by this instruction, and this, we think, was not proper. This instruction further imposed upon the village, as a matter of law, the duty of keeping the street for its entire width, in a reasonably safe condition for public travel. It is the duty of cities and villages to use reasonable care to keep their streets in a reasonably safe condition for public travel, and free from obstruction, but they are not insurers against accident to those using them. It is not necessary that a street should be absolutely free from imperfections in order to relieve the cities and villages of liability. Reasonable care and reasonable safety is all that the law requires of cities and villages. Vil-

lage of Lockport v. .Licht, 221 Ill. 35. It cannot be
said as a matter of law that grading or opening any
certain part or number of feet of the width of a street,
would.or would not make that street reasonably safe
for public travel. Neither can it be said as a matter
of law that a street must be graded uniformly for its
entire width to relieve the village from liability for
accidents occurring upon the street. It is true that
in City of Spring .Valley v. Gavin, 182 Ill. 232, it was
held that under the facts of that case the court did
not err in giving an instruction which said that a per-
son traveling the streets of a city which are in con-
stant use by the public has the right to act upon the
presumption that such streets are reasonably safe for
ordinary travel throughout their entire width. But
the briefs in that case when in this court (81 Ill. App.
456) show that the words ''throughout their entire
width'' in said instruction were not criticised or dis-
cussed by counsel, and the opinion of this court, which
the Supreme Court adopted, shows that those words
were not considered by the court. The question there
was whether it was correct to say that one using the
street has a right to act on the presumption that it
was reasonably safe for travel. The case of City of
East Dubuque v. Burhyte, 173 Ill.. 553, there relied
upon, contains no suggestion that a street must be rea-
sonably safe for travel for its entire width. The facts
in the Gavin case bore no resemblance to the facts
here. There the city left in the street, close to the
graveled way traveled by teams, an open ditch about
five feet deep and three feet wide, in which a water
main was to be laid, without any light or warning of
danger. Gavin had no knowledge of the excavation, and
drove into it in the night time. The words, ''through-
out their entire width'' in that instruction were un-
important and immaterial under the facts in that
case. The accident here was in broad daylight, there
was a considerable width of street fitted for travel, and
the alleged obstruction was not a hidden ditch or dan-

ger but was a high wire netting plainly visible and evidently put up to prevent teamsters from driving against the tree which stood in the street. The instruction here under discussion would require appellant to fill and grade the low part east of the driveway, and also to fill the gully the whole width of the street. It was calculated to . mislead the' jury. The court should therefore have granted the motion for a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*