## SHREVE *v.* CITY OF FORT WAYNE.

[No. 21,891. Filed October 13, 1911.]

1. MUNICIPAL CORPORATIONS.—*Streets.*—*Negligence.*—Municipal corporations are liable for negligence in the maintenance of their streets. p. 350.

2. MUNICIPAL CORPORATIONS.—*Streets.*—*Failure to Light.*—Municipal corporations are not liable merely for the failure to light their streets. pp. 350, 352.

3. MUNICIPAL CORPORATIONS.—*Streets.*—*Negligence.*—It is the duty of a municipal corporation to keep its streets free from obstructions in all their parts. p. 351.

4. MUNICIPAL CORPORATIONS.—*Streets.*—*Care.*—*Jury.*—Whether a

city has exercised reasonable care to keep its streets free from obstructions is a question for the jury; and greater diligence may be required in case of a much-traveled street than in the care of one but little used.   p. 352.

5. MUNICIPAL CORPORATIONS.—*Streets.*—*Sidewalks.*—*Obstructions.*—*Complaint.*—A complaint alleging that defendant city negligently permitted a wire to be maintained along the edge of a grass-plot between the paved street and the sidewalk, that no signal was placed by it, that such place so enclosed by the wire appeared to be open, safe, and much traveled, that plaintiff, on a dark night, without any notice of such obstruction, attempted to pass over it and was caught and thrown by such wire, to his damage, states a cause of action.   p. 353.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Frank Shreve against the City of Fort Wayne. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Reversed.*

*George W. Louttit,* for appellant.

*Guy Colerick,* for appellee.

MYERS, J.—The action is for personal injuries to appellant, caused by being tripped by a wire, upheld by stakes, placed along the curb line of two intersecting streets for the apparent purpose of protecting a grassplot between the sidewalks and roadways. The question turns upon the effect to be given the following material averments of the complaint, to which a demurrer for want of facts to constitute a cause of action was sustained: That at a point on said strip of ground and in front of a dwelling-house on West Jefferson street, which runs east and west, in the city of Fort Wayne, the street is improved with a paved roadway, with a grassplot seven feet, four inches wide between the curb of the roadway and the sidewalk from Fulton street to Broadway, the latter being alleged to be the main north and south business street of the city; that at a point within seventy feet of the main business portion of Broadway, and on the south side of West Jefferson street, there were two small stakes extending about a foot from the surface of the ground and imme-

diately adjoining the curbing, and a half foot apart, and a third stake at right angles to the curb, and four feet, nine inches south of the western stake, from the tops of which stakes, for thirty days prior to April 10, 1907, there had been stretched a fine wire at a distance of about one foot from the ground, of which the city had notice, or could have known by the exercise of ordinary diligence, but it carelessly and negligently permitted said wire to remain, knowing that hundreds of people passed the place daily; that such wire and stakes created a dangerous condition, and that there was nothing to warn the public of their existence, except the obstruction itself; that at night it was impossible for pedestrians to know of their existence, as there was no light within eighty feet of the place; that West Jefferson street at the point was a much-traveled street, and that for a long time prior to April 10, 1907, the public and citizens generally had been accustomed to walking across that part of the strip of ground where the stakes were placed; that it was impossible to see the stakes or wire because of the intense darkness at that point, and because there was nothing to warn the public of the danger of crossing; that there was no grass at the point, and that it had the appearance of being frequently traveled by the public, and that it was a part of the public highway for travel, all of which plaintiff believed, having been deceived by its said appearance into thinking said point was for public travel. Other allegations sufficiently bring notice to the city. It is alleged that about 10 o'clock p.m. on April 9, 1907, at a time when it was intensely dark, plaintiff, not knowing of the existence of said stakes and wire in the place and condition as herein alleged, and, though having good eyesight, he was unable to see them, while hurrying to catch a car that was on said Broadway, ran west on West Jefferson street; that plaintiff was carrying a camera, and also a case containing a flash-light apparatus; that he was following the beaten path of said highway, across which was stretched the wire; that said wire and the stakes support-

ing it were the same color as the ground, and a person in an upright position would be unable to ascertain the existence thereof; that plaintiff, without fault on his part, ran into said wire and stakes, which defendant had carelessly and negligently permitted to remain in the dangerous condition and place as aforesaid, there being no light or guards to warn plaintiff of the existence thereof, and was violently hurled to the asphalt pavement, whereby he was greatly injured. The specific injuries are set out.

Appellee's contention is that as §8888 Burns 1908, Acts 1905 p. 219, §234, provides for grassplots on streets, stretching wires across and along them to protect them cannot be regarded as unlawful, and that under the doctrine set out in the case of *Teague* v. *City of Bloomington* (1907), 40 Ind. App. 68, and cases there collected, a city is not liable.

Whatever may be the logical grounds for the distinction, if any, between the liability of cities for negligence arising from the condition of streets, and nonliability of counties and townships for defects in highways, the doctrine seems now too well settled in this State to be called in question, or the reasons to be explained. 4 Dillon, Mun. Corp. (5th ed.) §§1713-1717, discusses the question somewhat fully.

We are not advised by the complaint as to the purposes to which the strip between the sidewalk and the curb of the roadway was put, or whether the wire was at the intersection of the streets, but assume that it was, and that it was put there to protect a grassplot. The case is so treated by counsel. We do not attach any importance to the allegation that there were no lights at that locality, except as it might be a factor in determining reasonable care as to the alleged obstruction itself. A city is under no legal duty to light any locality. Negligence does not arise as a matter of law from the mere fact of its absence. 4 Dillon, Mun. Corp. (5th ed.) §1701; *Town of Spencer* v. *Mayfield* 1909), 43 Ind. App. 134; *Mitchell* v. *City of Tell City*

(1908), 41 Ind. App. 294; *City of Vincennes* v. *Spees* (1905), 35 Ind. App. 389; *City of Vincennes* v. *Thuis* (1902), 28 Ind. App. 523; *White* v. *City of New Bern* (1907), 146 N. C. 447, 59 S. E. 992, 125 Am. St. 476, 13 L. R. A. (N. S.) 1167 and note.

If the complaint is sufficient, it must be because it shows conditions that required the city to erect barriers, or to maintain danger signals, and if that duty is shown, it 3. must arise from the alleged fact that many people daily passed over the place, and it appeared to be a worn and traveled way, whereby appellant was induced into a false sense of security in passing over it. There was a sufficient, unobstructed sidewalk, but appellant in his hurry took a short cut; and the question is, was he justified in his inference of a clear way and a right to travel there, in the absence of warning signals? The cases are numerous in which it has been held that the full width of a roadway or sidewalk must be kept reasonably free from obstructions in all its parts. Note to *Elam* v. *City of Mt. Sterling* (1909), 20 L. R. A. 512, 588, 591; *City of Atlanta* v. *Milam* (1894), 95 Ga. 135; Elliott, Roads and Sts. (2d ed.). §645.

Many cases hold that such erections as hydrants, telegraph and telephone poles, hitching-posts, stepping-stones, and other barriers outside the sidewalk or roadway proper, in grassplots, or town pumps or fountains in streets, are not obstructions for which a city is liable as for nuisances. These cases seem to be grounded on the proposition that so long as there remains reasonable space outside the obstruction a city is not remiss in allowing the obstruction, especially where they are of a public utility character. *Lostutter* v. *City of Aurora* (1891), 126 Ind. 436, 12 L. R. A. 259; *Teague* v. *City of Bloomington, supra; City of Vincennes* v. *Thuis, supra; Dougherty* v. *Trustees, etc.* (1899), 159 N. Y. 154, 53 N. E. 799.

There are cases holding a qualified doctrine as to obstructions or excavations so near a roadway or sidewalk

that danger may reasonably be apprehended from the ordinary and reasonable use thereof, in which cities have been held liable for injuries arising therefrom, as to those using ordinary care. A number of cases are collected in the case of *City of Vincennes* v. *Spees, supra.* See, also, note to *Elam* v. *City of Mt. Sterling, supra,* 593 *et seq.;* cases in note to *Shea* v. *Town of Whitman* (1908), 20 L. R. A. (N. S.) 980; *Town of Spencer* v. *Mayfield, supra; Birch* v. *Charleston Light, etc., Co.* (1903), 113 Ill. App. 229.

While cities are not required to light streets, and no recovery can be had for damages caused by the absence of lights, yet if an obstruction exists that creates an actionable 2. nuisance, the presence of lights might render that nuisance nonactionable, by disclosing it. But a traveled way, or one prepared and designated for travel, must be kept in a reasonably safe condition for the ordinary 4. nary modes of travel by night as well as by day, and it is a question for a jury whether ordinary and reasonable care has been exercised in keeping it free from obstructions, or guarding the public against danger from the obstruction, thus leaving the method of discharging the duty to the municipality, subject to the judgment of a jury as to whether the method adopted or the thing done is a sufficient discharge of the duty, unless it be a case where fair-minded men could not honestly differ upon the question, nor reach but one conclusion. *Mitchell* v. *City of Tell City, supra; Thunborg* v. *City of Pueblo* (1909), 45 Colo. 337, 101 Pac. 399; *Culverson* v. *City of Maryville* (1896), 67 Mo. App. 343.

Greater diligence may be required in the case of a much-traveled way, than where it is little used, in case that fact is a factor in determining what is reasonable care. *Forker* v. *Borough of Sandy Lake* (1889), 130 Pa. St. 123, 18 Atl. 609; *Miller* v. *Town of Canton* (1905), 112 Mo. App. 322, 87 S. W. 96; *Welsh* v. *Inhabitants of Amesbury* (1898), 170 Mass. 437, 49 N. E. 735; *Hennepin* v. *Coleman* (1907), 132 Ill.

App. 604; *Moore* v. *City of Kalamazoo* (1896), 109 Mich. 176, 66 N. W. 1089.

Here we have a physical obstruction in a populous district in a large city—where the public may reasonably be presumed to have a large discretion and choice in the use of the street and walks—of such a character that it could not be seen in the dark, and was likely to become a snare and a trap, in a place on a line of travel, and that was much traveled. Whether it was reasonable care on the part of appellee to leave it as it was, or whether appellant's negligence contributed to his injury, should be determined by a jury under all the circumstances and factors involving both reasonable care on the part of the city and of appellant. The judgment is reversed, with instructions to the court below to overrule the demurrer to the complaint, and for further action not inconsistent with this opinion.