## Dryden, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—"Stop, look and listen"—Grade crossings—Death—Nonsuit.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, killed at a grade crossing of a public road, where the evidence shows beyond dispute that the deceased could not have stopped, looked and listened at any reasonably proper place before driving upon the track, it is immaterial what may have been the speed of the train, or what was the distance from the crossing at which the train might have been seen by the deceased, or that the sound of the locomotive whistle was liable to be obscured by a hedge; or whether or not the crossing was particularly dangerous. These principles are applicable to a case where the deceased hired the driver and buggy in which he was riding, and was not driving himself at the time of the accident.

Argued Feb. 27, 1905. Appeal, No. 219, Jan. T., 1904, by plaintiff, from order of C. P. Berks Co., Aug. T., 1902, No. 112, refusing to take off nonsuit in case of Elizabeth S. Dryden v. Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. ENDLICH, J.

The facts as stated by the court were as follows :

On the forenoon of August 21, 1901, the plaintiff's husband hired a buggy, with driver, in Leesport, to go to a nearby place. The road crosses the railway diagonally at grade and then runs almost parallel with it for some distance, at a level depressed below that of the railway, a hedge intervening between the two. On the opposite side of the road and between it and a canal there is a line of willow trees arching over the road. Returning along this road, at a leisurely pace, with the top of the buggy raised, but without curtains, the team collided at the crossing with an express train going south, and both men were killed. Before reaching the turn in the road towards the track, which begins about sixty feet from the center of the track, there is a railway crossing caution board. At a point further on in the approach to the crossing, and variously stated to be fifteen, twenty-three and thirty-six feet from the track, there is an unobstructed view of the same to the north for at least 1,325 feet, to a whistling board. There the whistle of the train was sounded. There is nothing to indicate that the horse had become frightened and unmanageable. The train was slightly behind time and was running fast—the engineer, called by plaintiff, says sixty miles an hour though from the testimony of some of the plaintiff's other witnesses the speed may be figured up to ninety or 100.

The court entered a compulsory nonsuit which it subseqently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*H. R. Green,* of *Green & Green,* with him *Henry Maltzberger,* for appellant.

*Cyrus G. Derr,* for apppellee.

PER CURIAM, May 1, 1905 :

The learned judge below after stating the facts in his opinion refusing to take off the nonsuit, continued : "The collision occurred the instant the carriage reached the track.    There was testimony that the sound of the locomotive whistle was liable to be obscured by the hedge, etc., already referred to.    But no matter to what extent that may be true, and no matter which of the figures named are accepted as correctly giving the speed of the train or the distance from the crossing at which it might have been seen by the occupants of the buggy, it is too plain for dispute that they could not have stopped, looked and listened at any reasonably proper place without seeing the train close upon the crossing and realizing the manifest peril of an attempt to pass ahead of it : Holden v. Penna. R. R. Co., 169 Pa. 1.    The failure to do so constitutes per se such negligence as bars a recovery : Penna. R. R. Co. v. Beale, 73 Pa. 504; Whitman v. Penna. R. R. Co., 156 Pa. 175; Gray v. Penna. R. R. Co., 172 Pa. 383; Gleim v. Harris, 181 Pa. 387.    Nor, in view of the contributory negligence thus conclusively established, is it of any importance to inquire whether this crossing was particularly dangerous, or assuming it to be such whether there may not have been negligence in the defendant company in running its trains at so great a speed over it.    Where the bar of contributory negligence is not in the way, these questions may arise : Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506.    But the exceptionally dangerous character of a crossing has a bearing upon the degree of care to be exercised by the traveler as well as of the railway company using it.    The greater the danger of the crossing, the more obligatory the duty of the traveler approaching it to stop, and if unable to get a sufficient view from his carriage, then to get out of it and go forward on foot : Penna. R. R. Co. v. Beale, 73 Pa. 504; Kinter v. Penna. R. R. Co. 204 Pa. 497.    The matter of speed, on the other hand, is wholly immaterial where, so far as the evidence goes, it is manifest that the party injured could not have been caught by the engine except for his failure to use his senses and heed the warning they were bound to give him had he used them.

" Nor can it be contended that these principles are inapplicable here because the plaintiff's husband was not the driver of the

horse drawing the carriage in which he rode. The rule in Boro. of Carlisle v. Brisbane, 113 Pa. 544 ; Carr v. Easton, 142 Pa. 139 ; Finnegan v. Foster Twp., 163 Pa. 135, and similar cases, is predicated of the negligence of a voluntary carrier, over whose actions and omissions the persons riding with him and injured had no rightful control, not of one hired by, or for the time being in the employ of such person, and subject to his direction and restraint. As shown by the decisions in Crescent Twp. v. Anderson, 114 Pa. 643 ; and Dean v. Penna. R. R. Co., 129 Pa. 514, even in the former class of cases, the immunity accorded is not absolute to the extent of excusing reasonable caution in the face of patent danger."

The judgment is affirmed on this opinion.