*PENNSYLVANIA CO. v. ELIZABETH STAHL.

**1. Duty of Person Riding in Vehicle Driven by Another Over Railway Crossing.**

A person riding in a vehicle, driven by another, is required to use ordinary care for his own safety when passing over a railway crossing; if he fails to do so and is injured thereby he cannot recover therefor notwithstanding the railway company's negligence.

**2. Duty of Daughter in Buggy Driven by Parent to Look and Listen at Railway Crossing.**

Ordinary care demands that one riding in a buggy driven by another over a railway crossing should look and listen for approaching trains; hence, if a daughter riding in a buggy with her parents, having full possession of her faculties and knowing of the time and operation of trains over a highway crossing near her home, is guilty of negligence in failing to observe an approaching passenger train such as will defeat her recovery for injuries sustained thereby, unless some other fact appear to excuse her from such duty.

[Syllabus approved by the court.]

ERROR.

*Arrel, Wilson & Harrington,* for plaintiff in error.
*Anderson, Cook & Mathews,* for defendant in error.

**POLLOCK, J.**

Elizabeth Stahl, by her next friend, brought suit in the court below against the Pennsylvania Company to recover damages for personal injuries which she received in consequence of an accident while crossing the railroad tracks of the company. She says that her injuries were due to the negligence of the defendant company.

On June 11, 1910, the defendant was operating a railroad through the county of Trumbull, which crossed a public highway at what is known as Dunlap's crossing. The plaintiff on this morning received the injuries of which she complains by the buggy in which she was riding coming in collision at that cross-

*Settled, 59 Bull. 157.

ing with a fast passenger train. The railroad tracks run substantially north and south, and cross the public highway at grade and at right angles. South of this crossing the tracks of the railroad run straight for about three-quarters of a mile. Beginning near the crossing, and extending south for a distance of three or four hundred feet, is an embankment on the west side of the railroad tracks some four or five feet in height. The view of the tracks from the public road, as this crossing is approached from the west, is not otherwise obstructed.

The record discloses that the parties caused measurements to be taken, and observations to be made, to determine at several points on the highway the distance south on the tracks a train could be seen, by a person riding in a buggy.

It is not material which of the measurements and observations are accepted as correctly giving the distance from the crossing that the train might have been seen by the occupants of the buggy, as it is beyond dispute that a person riding in a buggy could not look as they approached the railroad tracks from the west, and before passing upon them, without discovering a train approaching from the south if it were so close to the crossing that it would be dangerous to attempt to cross in advance of the train.

There is no testimony tending to prove that this train was running at over fifty miles an hour.

On the morning of the accident plaintiff below, with her father and mother, were going from home east on this public road to church. They were riding in a one-horse buggy, with the top up. The father and mother were sitting on the seat, and the plaintiff was sitting on a stool in front and facing her parents; the father was driving the horse. The home of plaintiff was a short distance west of this crossing. She knew of the railroad crossing and all the surroundings, and of the operation of trains over these tracks. She knew that a passenger train was due about the time they were approaching the track. At the time of the accident the plaintiff below was between sixteen and seventeen years of age. The father's hearing was slightly impaired, which fact was known to the plaintiff below. The father and mother were killed by the accident, and the plaintiff below

Pennsylvania Co. v. Stahl.

is the only witness as to what transpired in the buggy as they approached and passed on to the tracks.

The plaintiff below says that she first looked to her right; that she then looked to her left, and just at that time she was struck by the train; that she had not looked before that time; that she did not notice anything the other occupants of the buggy were doing, except that her father was driving the horse. There is a conflict in the testimony as to whether or not the signal required by statute was given by defendant as the train approached the crossing.

The acts of negligence averred by plaintiff below in her petition are that the defendant failed and neglected to give any notice or warning of the rapid approach of the train to the crossing, and in causing and permitting said train to be run at a high and dangerous rate of speed; that the negligence of defendant, as alleged, was the cause of her injuries.

The defendant, by answer, denied these acts of negligence, and alleged contributory negligence on the part of plaintiff below; that she went upon the tracks of defendant below without taking any precaution, or using any care for her safety.

The plaintiff below, by reply, denies the contributory negligence alleged by the defendant below.

The case went to trial to a jury. At the close of plaintiff's evidence the defendant asked the court to direct a verdict in its favor, and renewed the motion at the close of all the evidence.

It is urged that the trial court in overruling these motions, asking that a verdict for defendant be directed, erred, for the reason that plaintiff was guilty of contributory negligence in not taking ordinary care for her own safety; and this proceeding in error is prosecuted to obtain a reversal of the judgment of the court of common pleas for this and other errors.

Where a traveler on the public highway is approaching a railroad crossing, it is his duty to use ordinary care for his own safety, and if he fails in this, and is injured thereby, he can not recover, although the railroad company may have been guilty of negligence in failing to sound a whistle, or ring a bell, or give any other warning of the approach of the train to the crossing.

In this state the care required of a person traveling on a public highway, when about to cross the tracks of a railroad, is no longer a question of fact, but has become a rule of law, the failure to observe which is negligence.

A traveler on the public highway in the full enjoyment of his senses of sight and hearing, before going upon a railroad crossing, should look and listen for the approach of a train, and if he fails to discover the approach of the train in time to avoid danger, when a prudent person by looking and listening would have discovered it and avoided the danger, he is guilty of such negligence as will defeat a recovery, unless some further facts appear which will relieve him. *Cleveland, C. & C. Ry.* v. *Crawford,* 24 Ohio St. 631 [15 Am. Rep. 633]; *Cleveland, C. C. & I. Ry.* v. *Elliott,* 28 Ohio St. 340; *Pennsylvania Co.* v. *Rathgeb,* 32 Ohio St. 66; *Baltimore & Ohio Ry.* v. *McClelland,* 69 Ohio St. 142, 157 [68 N. E. Rep. 816].

"Where a person, familiar with a dangerous railroad crossing, in passing over the same, neglects the exercise of any care to ascertain if a passing train is near, and in consequence of such neglect is injured by a collision with the train, he is guilty of negligence, and the mere fact that he had forgotten that he was in the vicinity of the crossing will not excuse such neglect." *Baltimore & Ohio Ry.* v. *Whitacre,* 35 Ohio St. 627.

"The looking required before going upon a crossing, should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train within the range of his view of the track, going at the usual rate of speed of fast trains, would reach such crossing." *New York, C. & St. L. Ry.* v. *Kistler,* 66 Ohio St. 326 [64 N. E. Rep. 130].

The father and mother were both killed in the collision, and the plaintiff is the only witness who testified in regard to what she did as they approached and passed upon the crossing, just before the accident.

She says she was riding in the manner already stated; that she first looked to her right, which would be north, that she then looked to her left, which would be in the direction of the train, and just at that time they were struck. She testifies that she did not look before that time; that she did not notice anything the

other occupants of the buggy were doing, except that her father was driving the horse. This is all the testimony in regard to what any of the occupants of the buggy were doing just before the accident.

Plaintiff was possessed of all her faculties. She resided near the railroad crossing; she knew of the crossing and the operation of trains over the railroad. It was daylight, and plaintiff as she approached and just before she passed upon this track, by looking could have seen the approach of this train in time to have avoided injury. But she says that she did not look until just before she was struck by the train. She must be held to be guilty of such negligence as will defeat a recovery, "unless some further fact appears which relieves" her from looking and listening.

It is urged that because she was only riding in the buggy, while her father was driving, she was excused from using the care ordinarily required of persons approaching a railroad crossing, and had a right to rely upon her father exercising such care; and if he failed in this, and plaintiff was injured through the negligence of the driver, her father, and the railroad company, she could not recover against the defendant.

"The doctrine of imputed negligence does not prevail in this state." *New York, C. & St. L. Ry.* v. *Kistler, supra; St. Clair St. Ry.* v. *Eadie,* 43 Ohio St. 91 [1 N. E. Rep. 519; 54 Am. Rep. 802].

Under the facts in this case the negligence of the father could not be imputed to the daughter, but it is not sought to charge plaintiff with the father's negligence, but with her own.

This brings us to the determination of the question of the care required of a person riding in a buggy, when approaching a railroad crossing, but who is not engaged in driving the horse.

Counsel have not called our attention to, and we have been unable to find, any case where this question has been determined by the Supreme Court of this state.

In the case of *Toledo & O. C. Ry.* v. *Eatherton,* 11 Circ. Dec. 253 (20 R. 297), the circuit court held that:

"It is the duty of the occupants as well as the driver of a

wagon, in approaching a known railroad crossing to look and listen for approaching trains; and where the evidence shows that the occupants, as well as the driver, failed to do so, the occupants are guilty of negligence which will defeat their recovery.''

The court of appeals of Indiana has held that while ''the negligence of a driver will not deprive the occupant of the vehicle of his right to recover from one whose neglect has caused the injury, but even if the negligence of the driver can not be imputed to the occupant, yet the occupant must still show that he was free from negligence contributing to his own injury.'' *Lake Shore & M. S. Ry.* v. *Boyts,* 16 Ind. App. 640 [45 N. E. Rep. 812].

The same court in *New York, C. & St. L. Ry.* v. *Robbins,* 38 Ind. App. 172 [76 N. E. Rep. 804], says:

''The fact that decedent was riding with her husband, who had entire control of the team, did not relieve her of the duty of exercising care for her own safety. * * * Liability was denied not on the ground that the negligence of the driver was imputed to the injured person, but that the injured person herself failed to exercise the care required of a person approaching a crossing.

''Each person approaching a railroad crossing must use ordinary care for their own safety, and can not rely upon the driver being both eyes and ears for them.''

''It is the duty of the passenger, when he has the opportunity to do so, as well as of the driver, to learn of danger and avoid it if practicable.'' *Whitman* v. *Fisher,* 98 Me. 575 [57 Atl. Rep. 895]; *Brickell* v. *Railway,* 120 N. Y. 290 [24 N. E. Rep. 449; 17 Am. St. Rep. 648].

The supreme court of Kansas says:

''A special finding in an action for injuries in a collision with a train at a crossing, that plaintiff had no control over the vehicle in which she was riding, did not acquit her of contributory negligence in failing to see the approaching train, when she could have seen it, had she looked, in time to have avoided the accident.'' *Missouri, K. & T. Ry.* v. *Bussey,* 66 Kan. 735 [71 Pac. Rep. 261].

The plaintiff below was bound to use the care for her own

safety ordinarily required of travelers on the public highway, when approaching a known railroad crossing. The fact that she was only an occupant of the buggy, while her father was driving, will not relieve her from that duty.

She was seated in the buggy in such a position that she could have looked for the approach of the train, and had she looked, would have seen the train. It was equally her duty, as well as that of her father, to look and listen and learn if a train was approaching in dangerous proximity to the crossing, and, if it was, to call the driver's attention to the danger. A failure to do so will constitute such contributory negligence as will prevent a recovery, although the railroad company did not give the warning required of it, and even though she did not have authority to control the acts of her father.

This conclusion is sustained by numerous decisions by the courts of other states, a few of which are cited: *Aurelius v. Railway,* 19 Ind. App. 584 [49 N. E. Rep. 857] ; *Dryden v. Railway,* 211 Pa. St. 620 [61 Atl. Rep. 249] ; *Pennsylvania Co. v. Henderson,* 179 Fed. Rep. 580 [103 C. C. A. 135] ; *Vincennes v. Thuis,* 28 Ind. App. 523 [63 N. E. Rep. 315] ; *Colorado & S. Ry. v. Thomas,* 33 Colo. 517 [81 Pac. Rep. 801; 70 L. R. A. 681; 3 Ann. Cas. 700] ; *Bush v. Railway,* 62 Kan. 709 [64 Pac. Rep. 624] ; *Atlantic & D. Ry. v. Ironmonger,* 95 Va. 625 [29 S. E. Rep. 319] ; *Holden v. Railway,* 177 Mo. 456 [76 S. W. Rep. 973] ; *Flynn v. Railway,* 250 Ill. 460 [95 N. E. Rep. 499].

It would not be strictly correct to say that the authorities uniformly hold the above conclusion. Probably cases can be found which hold that the occupant of a vehicle, when approaching a railroad crossing, has a right to rely upon the driver using ordinary care to avoid danger. But we think an examination of the cases, which seem to hold this rule, will mostly show some fact which relieved the occupant from this duty; that they were riding in such a position that they either could not look, or, if they did look, it would interfere with the driver, or that they saw the driver looking and listening and relied upon him, or that they were a passenger for hire in a public conveyance.

We think, where there is no excuse given for not doing so, that the great weight of authorities hold that an occupant of a

private conveyance, which another is driving, is required to use the same care for their own safety, when approaching a known railroad crossing, that they would be required to exercise if passing alone over the railroad.

Now, in this case there was nothing to interfere with the plaintiff below seeing. She was sitting in a position to see if she had looked. Had she looked she would have seen the train. She says she did not see her father looking. She knew that he was slightly deaf. She says that she did not look until just before the train struck the buggy; they were then upon the track and her looking was too late.

The court of common pleas erred in refusing to direct a verdict for defendant below. The judgment of the court below is reversed and judgment entered for the plaintiff in error.

**Norris** and **Metcalfe, JJ.,** concur.