SOUTHERN PAC. CO. v. WRIGHT et al.

(Circuit Court of Appeals, Ninth Circuit. February 18, 1918. Rehearing Denied April 1, 1918.)

No. 2942.

1. NEGLIGENCE ⬅92—IMPUTED NEGLIGENCE—DRIVER AND PASSENGER.

Where deceased, for the purpose of trying out a motor truck with a view to its purchase, applied to the owner for the use of the truck, and the owner assented on condition that an experienced chauffeur should drive and demonstrate it, the deceased, who was paying for the use of the truck, must, though riding thereon and directing its general route, be deemed a passenger, and the negligence of the chauffeur cannot be imputed to deceased.

2. RAILROADS ⬅350(21)—CROSSING ACCIDENTS—JURY QUESTION.

Where deceased, while riding on a motor truck in company with a presumably competent driver, who was demonstrating it for the owner, was killed when the truck was struck by defendant's train, the fact that deceased, the view being open, did not interfere with the management of the truck when it was driven on the tracks, does not as a matter of law show that the deceased was guilty of contributory negligence, but that question is for the jury.

Hunt, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Southern District of California; Oscar A. Trippet, Judge.

Action by Gertrude Wright and others against the Southern Pacific Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

L. L. Cory, of Fresno, Cal., and Elmer Westlake, of San Francisco, Cal., for plaintiff in error.

Gallaher & Aten and Frank Kauke, all of Fresno, Cal., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. On May 22, 1914, George R. Wright, while riding upon an auto truck, was instantly killed at a railroad crossing in Selma, Cal., in a collision between the truck and the engine of a passenger train operated by the plaintiff in error, hereinafter referred to as the Railroad Company. Defendants in error, the surviving wife and children of the deceased, had judgment in the lower court for $12,000 damages, to reverse which the Railroad Company prosecutes this writ of error.

There are numerous assignments, but, when analyzed, it is found that, in so far as they have substance, they are all comprehended in the question whether or not the court below should have held as a matter of law that the deceased was chargeable with such contributory negligence as to bar recovery by his heirs. The Railroad Company introduced no evidence, and, adopting the view of the plaintiffs' testimony which the jury might reasonably have taken, we may state the salient facts as follows:

The deceased was in the drayage business at the town of Selma, and apparently, both for the purpose of trying out an auto truck with a view to its purchase and to make certain transfers, he applied to the owner, Phelan, for the use of the truck in question. Phelan assented, upon the condition that one Tucker, an experienced chauffeur, should drive the truck and "demonstrate" it, and that Wright should pay for its use at the rate of $15 per day. With this understanding, the truck was put into service on May 22d, and at about 9 o'clock in the morning Tucker, with the deceased sitting in the seat, on the right side, drove the truck southerly for about a quarter of a mile along a road running parallel with the railroad track, and then turned to make the crossing. The passenger train from the north was about due, and as he turned he looked in that direction, but could see no train, although the track was plainly exposed to view for approximately 1,500 feet. Up to this time his speed had been about 6 miles an hour, but as he made the turn, a distance of about 145 feet from the main track, he slowed down to 3 or 4 miles, and, proceeding at that speed, and looking down the track to the south for trains from that direction, he passed over the first and second tracks, and was just about to go upon the main track, when, again looking to the north, he saw the passenger train somewhere between 200 and 400 feet away, coming rapidly. He

made an effort to increase his speed, but not soon enough, for the engine struck the rear end of the truck, overturning it, and injuring him and killing Wright. The train was running at a speed of between 30 and 40 miles per hour, without bell or whistle, in violation of an ordinance limiting the speed to 8 miles an hour, and a statute requiring the sounding of a bell or the blowing of a whistle.

[1, 2] Undoubtedly a prima facie case was made of gross negligence on the part of the engineman, and the cause was properly sent to the jury, unless, as already suggested, the deceased was conclusively shown to have been guilty of contributory negligence. It is unnecessary to decide whether or not Tucker was wanting in due care, for he is not a party to the suit, and his negligence, if any there was, could not be imputed to the deceased. In no sense were the two men engaged in a joint or common enterprise. Their relation was substantially the same as the ordinary relation between passenger and cab driver. The passenger pays for the service, and assumes the right to direct where and over what general route the cab shall be driven, but has nothing to do with its operation or management. So here, if, favorably to the Railroad Company, we attach no significance to the fact that the truck was being "demonstrated," Wright was paying for the service of the truck, and presumably was directing where it should go, and over what general route, but, by express understanding, Tucker was running it. Under such circumstances, Wright was responsible only for his own conduct, not for Tucker's. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Shultz v. Old Colony Street Ry. Co., 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402; New York, L. E. & W. Ry. Co. v. Steinbrenner, 47 N. J. Law Rep. 161, 54 Am. Rep. 126.

Was he himself guilty of negligence? Can we say as a matter of law that he failed to use the degree of care for his own safety which an ordinarily prudent person under like circumstances would have exercised? If so, in what respect was he careless? What did he leave undone, that he should have done? We must bear in mind that there is no evidence that he was an experienced driver; fair inferences are to the contrary. In so far as we are advised, Tucker was competent, and by Wright was believed to be competent, to operate the truck skillfully and safely. As was aptly said by Judge Marshall, in Pyle v. Clark (C. C.) 75 Fed. 647:

"It is a matter of common experience that passengers in a vehicle trust to the driver to avoid the ordinary dangers of the road, and I do not know of any principle of law which requires them to tender advice, unless conscious of the driver's ignorance or want of care."

It is not a case where the passenger, knowing the danger, voluntarily takes the risk, as where he rides in the nighttime over a perilous road or without lights. There was no circumstance to warn Wright of danger, or to suggest the need of assistance, or the advisability of cautioning Tucker. True, the railroad tracks were there, and they always warn of danger; and he may have known that the passenger train was about due. But until he had some reason to sus-

pect that Tucker was incompetent or careless, or was unable safely to operate the truck, he not only had the right, but it was his duty, to assume that he would not rashly or carelessly go into peril. Generally it is the duty of the passenger to sit still and say nothing. It is his duty, because any other course is fraught with danger. Interference, by laying hold of an operating lever, or by exclamation, or even by direction or inquiry, is generally to be deprecated; in the long run, the greater safety lies in letting the driver alone. And there is nothing in the circumstances here suggesting an exception to the rule. Tucker was sober, awake, and had the truck completely under control; and, so far as we know, he had shown no disposition to be reckless or venturesome. It was a bright morning, and the view of the track was unobstructed, so that in an instant he could glance either way and see an approaching train. There were no other sources of possible danger requiring vigilance, and plainly Wright's assistance as a lookout was not required. In short, it was a case where a reasonably competent, vigilant driver needed no assistance, and would in the long run be better off if left alone.

We are not advised whether or not Wright saw the train, as soon as it came into view, a quarter of a mile away, or before it was seen by Tucker. He might have seen it, and yet reasonably have remained silent, for he might naturally have assumed that, the view being unobstructed, Tucker saw it, too, and was governing himself accordingly. So that up to the very time that the truck approached the main track he may have reasonably supposed that Tucker would stop the car in time to avoid a collision. And when he realized that he was going to attempt to cross ahead of the train, what could, or should, he have done? Who can now say as a matter of law? Cry out? He might thus have confused and disconcerted the driver, and an instant of indecision in such a case may be fatal. Here, with the truck a half a second sooner or the train a half a second later, the tragedy would not have happened. It must be borne in mind that there was no time to reflect or reason. If the train was running only 30 miles an hour—the speed was probably greater—it was only about 30 seconds from the time it came into view a quarter of a mile away until it crashed into the truck.

In view of these circumstances, we are of the opinion that, in submitting the question of contributory negligence to the jury under proper instructions, the trial court gave the plaintiff in error no just ground for complaint; whether the facts were sufficient to warrant its submission over the objection of the defendants in error we need not inquire. No case has been brought to our attention where, under analogous conditions, it has been held as a matter of law that the contributory negligence of a passenger, either actual or imputed, was a bar to recovery, and the following decisions more or less directly support the view we have taken: Little v. Hackett, supra; Shultz v. Old Colony Street Ry. Co., supra; New York, L. E. & W. Ry. Co. v. Steinbrenner, supra; Partridge v. Boston & M. R. Co., 184 Fed. 211, 107 C. C. A. 49; Wilson v. Puget Sound E. R. Co., 52 Wash. 522, 529, 101 Pac. 50, 132 Am. St. Rep. 1044; Parmenter v. McDougall,

172 Cal. 306, 156 Pac. 460; Pyle v. Clark (C. C.) 75 Fed. 644, affirmed 79 Fed. 744, 25 C. C. A. 190.

The judgment will therefore be affirmed, with costs to defendants in error.

HUNT, Circuit Judge (dissenting). As Tucker described the accident, he would have "to make a circle to cross the track." He said that he looked up the track, and could see with a clear vision to the oil tanks, or a little further, at the point he looked; that he saw no train and heard no warning whistle or bell; that he then directed his view to his left, easterly and toward a packing warehouse and the depot; that the warehouse was not far east of the crossing of the tracks, and hid the view of the two side tracks; that he directed his observation that way until, as he described it, he got—

"clear out beyond until I knew everything was safe the way my view was ahead. * * * I looked to the left, which would be southeasterly, down towards the depot and Castle Bros.' packing house, to see whether anything was coming northwesterly. Then, after I was through looking that way, I turned and looked the other way. When I turned my gaze from the southeasterly, and looked back the other way, I had reached the point where the truck was practically going onto the main line track, as near as I can remember, when I saw the train coming, the front end of the train; practically the front part of the truck was on the main line. I could only see the train coming, and didn't hear any whistle or bell. When I saw the train, it appeared to be coming very fast; it seemed to be 200, 300, or 400 feet away. * * * It was coming from the northwest. I then reached down and opened the throttle and tried to gain a little more speed; I was going very slow; my automobile went forward. I watched this way until the train struck. That is the last I knew."

Witness said he believed Mr. Wright looked up the track at the same time he did. On cross-examination the witness gave substantially the same account, and also said:

"I never looked that way again, to see if there was a train approaching, until I passed a clear vision of the packing house. I was practically on the main track, and looked and saw the train coming right on us. * * * The whole space was there unobstructed, and there was no reason why, if I had looked, I couldn't have seen the train approaching."

The map introduced shows a crossing of four railway tracks at the foot of the crossing street; two side tracks easterly from the main track, then the main track, and a track west of the main track. They had crossed the two easterly side tracks before reaching the main track, where the engine hit the truck. From the time they started to cross the tracks at right angles with East Front street they would have had to travel approximately 75 feet before reaching the center of the main track.

It simplifies the case to determine Tucker's attitude from the standpoint of the duty of one driving a truck across steam railroad tracks. The train was in plain view before he drove the truck upon the two side tracks, and if before crossing, or if in crossing, them, he had looked in the direction toward the oil station, he would have seen the engine coming down the main track, and could easily have stopped

and let it pass. As to Tucker, the case clearly demonstrates contributory negligence.

The question, then, is: Was Mr. Wright guilty of culpable negligence? I agree that Wright was not the master of Tucker; on the other hand, he was not a passenger for hire, intrusting himself to a carrier. As the hirer of the truck and driver, utilizing the truck and driver's services in attending to his own affairs, and with control over its movements as to direction and service, he was bound to exercise ordinary care and diligence to protect himself in the hazardous situation of crossing the tracks. Mr. Wright was on the right side of the seat of the truck, and therefore had a better view than Tucker, and if, before Tucker drove over any of the tracks, Wright had turned his eyes toward the oil station, he would have seen the train coming, and could have warned Tucker in ample time to let him stop the automobile. But, instead of exercising what seems to me to be the ordinary vigilance, specially called for when it is considered that there were four tracks ahead of them as they crossed, Mr. Wright, like Mr. Tucker, failed, until too late, to give attention to the danger of trains from the direction of the oil station.

Under the undisputed facts and circumstances, I therefore think it should have been held that Mr. Wright, as well as Mr. Tucker, failed in the duty to exercise ordinary and proper care for his own safety, and by his omission to do so directly contributed to the cause of the accident. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Schofield v. Chicago & St. Paul Ry. Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; N. P. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; New York Central, etc., v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; Rebillard v. Minneapolis, St. P. & S. S. M. R. Co., 216 Fed. 503, 33 C. C. A. 9, L. R. A. 1915B, 953; Green v. So. Cal. Ry. Co., 138 Cal. 1, 70 Pac. 926; Martz v. Pac. Elec. Ry. Co., 31 Cal. App. 592, 161 Pac. 16; Brickell v. N. Y. C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449, 17 Am. St. Rep. 648; Dryden v. Penn. R. Co., 211 Pa. 620, 61 Atl. 249; Noakes v. N. Y. C. & H. R. R. Co., 121 App. Div. 716, 106 N. Y. Supp. 522.

But, while I think the court erred in not holding that initial contributory negligence on the part of Wright was conclusively shown, nevertheless, in my opinion, the case should have been submitted to the jury, but upon a phase which was expressly eliminated from consideration. It is this: The men in the truck were not trespassers. They were at a street crossing upon a thoroughfare which they had a right to use. An imperative duty devolved upon the engineer and fireman, who were running the locomotive through the city at a high and unlawful rate of speed, and without whistling or ringing the bell, to keep a specially vigilant lookout, in order to see whether or not people lawfully using street crossings were exposed to imminent danger upon the tracks ahead of their train.

The way ahead on both sides of the track, and toward the truck as it approached the main track, was perfectly clear for observation by the

engineer. The engineer knew the speed of his train. Therefore, in the light of the presumption that he and the fireman did keep a look-out, impartial common-sense minds could say that the most reasonable inference from the evidence is that the men on the engine did see the truck, and did observe its movements, as it slowly approached and started to go upon the track directly ahead of the train. There was, therefore, ample evidence to require the court to hold that, notwithstanding the fact that the negligence of Wright and Tucker had brought them to a situation of fearful danger, nevertheless, whether or not the engineer actually saw the truck, and, observing its movements, saw the peril of the men, yet was guilty of omission to use the means at his hand to give timely warning, and, if necessary, slow down and thus avoid collision with the truck and injury to the men in it, was for the jury to determine. Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Fluckey v. Southern R. Co., 242 Fed. 468, 155 C. C. A. 244.

But, as the District Court expressly charged the jury that the "last clear chance doctrine" had no application, the jury were precluded from considering the phase of the case just referred to. It therefore results: There was material error against the railroad company in submitting the issue of initial contributory negligence, which in my opinion ought not to have been submitted, and there was material error against the defendant in error in a refusal to submit the issue of knowledge of peril which by subsequent occurrences might have avoided the consequences of the contributory negligence. Under such circumstances this court must assume that the jury obeyed the charge of the court, and that the verdict and judgment were founded upon the single theory, which I think was improperly submitted.

The remedy, I think, should be by reversal, with directions to grant a new trial.