## HINES, Director General of Railroads, v. JOHNSON et al.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920. Rehearing Denied May 17, 1920.)

No. 3415.

1. **Railroads ⬅️350(21)—Contributory negligence of automobile passenger held for jury.**

In an action for death in a collision at night between a freight train and the automobile in which deceased was riding, evidence *held* to make a question for the jury as to his freedom from contributory negligence.

2. **Railroads ⬅️327(1)—Automobile driver must have machine under control and keep vigilant lookout.**

A railroad track is a danger signal, and it is the duty of an automobile driver approaching the crossing to have his machine under control and keep a vigilant lookout for trains.

3. **Railroads ⬅️348(2) — Absence of warning as proximate cause of collision shown.**

In an action for death in a collision at night between a freight train and an automobile in which deceased was riding, evidence *held* to justify the inference that neither deceased nor the driver of the automobile saw the train in time to avoid the collision, and hence that the railroad company's negligence in failing to give warning signals was the proximate cause of the accident.

4. **Negligence ⬅️136(30)—Driver's negligence not imputable to guest.**

The negligence of the driver of an automobile is not as a matter of law imputed to one riding with him as a passenger or guest.

5. **Negligence ⬅️68 — Automobile passenger must exercise care for his own safety.**

One riding as passenger or guest in an automobile driven by another may not place his safety entirely in the keeping of the driver, but must exercise due and reasonable care for his own protection and safety.

6. **Railroads ⬅️348(1)—Jury not bound to accept defendant's testimony, in conflict with that of plaintiff.**

In an action for death in a crossing collision, where defendant's testimony, on which it attempted to base a mathematical demonstration of the respective positions of the automobile and front car of the train, was in conflict with that for plaintiff, the jury were not bound to accept it as accurate.

7. **Trial ⬅️260(8)—Refusal of instruction not error where proposition was made plain in charge.**

The refusal of a requested instruction that a railroad company had the same right to use a crossing as the public had was not error, where the court clearly defined the obligation of the railroad company and the duty which devolved on those in an automobile, and made plain the general proposition included in the requested instruction.

8. **Railroads ⬅️312(3)—Warning of train's approach to crossing required.**

It was the duty of a railroad company to give adequate notice by warning or signal of a train's approach to a crossing over a city thoroughfare.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by Thea Sophia Johnson and another against Walker D. Hines, as Director General of Railroads. Judgment for plaintiffs, and defendant brings error. Affirmed.

Verdict and judgment for damages by reason of the death of Charles Ernest Johnson, as a result of a collision at Spokane between an automobile, in which Johnson was riding as a guest, and a freight train of the Oregon-Washington Railroad & Navigation Company, at about 10:15 o'clock on the night of July 28, 1918. The railroad company brought writ of error.

The deceased and one Ray were on the front seat of the automobile; Ray being the driver. They were driving northward on Division street, a thoroughfare 60 feet wide and running north and south. At the time of the accident a track of the railroad company crossed Division street in an easterly direction, running from the southwest to the northeast. At the outer side of the sidewalk and across the tracks there were gates, so maintained that before a train could cross Division street it would be brought to a standstill in order to allow a switchman to get off the train, unhook the gates, and swing them away from the track. Upon the night of the accident there was an arc light burning at the crossing above the middle of the street about 50 feet from the railroad track. Ray, the driver, had been employed by the Great Northern Railway as brakeman for a number of years, was accustomed to driving automobiles, and had driven the one here involved for two months. After saying that on the night of the accident he was driving north on the east side of Division street at about 12 or 15 miles an hour and that he saw nothing at all there, he continued:

"And just as we came on the track there the cars were shoved out and caught us, caught the automobile about square in the middle, and about the time the collision occurred I saw the box car, and about the same time it seemed like a light came around the corner of the car. We were shoved along about 15 or 20 feet down the track, and Mr. Johnson, who was riding on the right-hand side of me, was badly injured. I was injured myself. * * * I am familiar with lantern signals given by railroad companies, as it is a part of my business as a railroad brakeman on trains. I did not see any signal of any kind given, on the street or elsewhere, as I approached the corner and before I was struck. The night, as near as I can remember, was pretty dark; cloudy. There is one light there that I know of, and that is about 50 or 60 feet south of the O. R. & N. tracks. This light is an arc light. It seemed like it was just about far enough away, so it creates a shadow right over the track, rather than to light the track. I never noticed any light on the other side of the street. * * * I did not hear any signal of any kind given, nor any ringing of the bell on the engine. There was no signal given by the whistle of the train either."

On cross-examination Ray said he could not tell how fast the train was going at the time it struck; that there was no flag or signal of any kind on his side of the train as he approached it, except "just as they came onto us"; that he and deceased and a third man had been to a restaurant, and after eating Ray and Johnson started for home. Witness said he was familiar with the railroad tracks at the point of the accident; that he was going slowly, because one had to pick his way across the tracks, so as not to damage the car; that his headlights were burning; that the whole end of the car struck the automobile "in a sort of a side swipe"; that he did not see the train at all until the very moment it struck; that he made no turn of the automobile wheel in an attempt to turn it either way, in order to get out of the way and avoid the collision; that the train pushed the machine 15 or 20 feet; that he saw no one give a stop signal to the train; that there was some wood piled to the east side of the street, which he noticed; that there was a building around there, and the arc light, if it was burning, would cast a shadow; that Johnson did not say anything to him about the railroad crossing, and made no warning cry before the crossing was reached, and made no suggestion as to the running of the car; that he did not remember that Johnson said anything during the time that the car was running the last block before the accident; that he did not know whether there were red lanterns hanging on the gates at the time they approached the corner; that he did not examine to determine whether the gates were across the track, or had been brought back; that he was looking ahead, using his eyes to see what was in front of him.

A witness present a few minutes after the collision said that the freight car was jammed into the side of the automobile; that there was considerable wood piled up along the crossing of the sidewalk on the east side of Division street; that when he first saw the automobile it was headed directly north, and the car was right "into it, the north corner of the railroad car being imbedded in the automobile." Another witness said that he was driving a machine south on Division street on the night of the accident; that the night was very dark; that he heard a crash, and looked up, and looked into the lights of the automobile that was caught by the car; that he saw the car being dragged over the street; that he saw nobody with a lantern flagging the train; that the box car was imbedded in the automobile, and when they attempted to move the train the automobile followed a short distance, a foot or two, and was then released; that he thought about a third of the car was projecting past the box car, the corner of the freight car being just about even with the wind shield.

Other witnesses, who were riding in an automobile coming south, testified in effect that they saw no one waving a lantern back and forth immediately before the accident occurred, and that they saw the automobile being dragged.

Robinson, the fireman on the locomotive of the train, said that his duty was to take all signals going over Division street, because the engineer could not get them from the street, and that he was supposed to ring the bell himself in going across Division street; that as the train backed into Division street witness was fixing the fire; that he did not ring the bell, and that when he got through fixing the fire he got a "washout" from one of the brakemen and gave it to the engineer right away; that a washout is like a stop signal, except more violent; that it means to hold the train at once; that in repeating the order to the engineer he said, "That will do;" that he did not know anything was wrong, but the washout signal means danger; that it was his duty to repeat such signal to the engineer, but that he did not tell him to hold the train, merely saying, "That will do;" that he got the signal from a man next to the westerly sidewalk, over by the other gate, but that he could not say whether the man who gave the signal was in the street; that it was dark, and it looked as if it was over by the other gate when he got the signal from him; that it was very dark there that night, and that they got no signal when the train arrived at the gate that goes across the street, but the train stopped to open the gate; that he did not see the switchman get down off the train, and that, when he got the signal to come ahead, it came from the man on the first car, and when the train started to move he got down to fix the fire; that when he got back to his seat and started to reach for the bell rope he got the washout, which he knew was a signal to stop as quick as he could, but he only told the engineer that would do; that all he could see was the lantern on the south side of the track clear across the street; that he could not say whether the arc light was burning, and could not say for sure whether the bell was rung that night or not, but that he did not ring it.

Witness testified that he had been discharged by the company; that he had signed a statement of accident favorable to the company the day after the accident, because he was afraid he would lose his job. In the statement referred to witness had said that the train was stopped on the east side of Division street in order to allow the switchman to open the gate; that the switchman standing at the car next to the engine gave the signal to come ahead; that the bell began ringing, and continued to ring until after the accident; that the train started to move slowly west at a speed of about 2 or 3 miles, and had only moved two car lengths when the emergency signal to stop was received; that the engineer set the air emergency brake, and that the train stopped within a distance of one car length; that he did not go forward, but remained with the engine, but passed over the crossing soon after, and he noticed that a red light was burning on the gate at the west side of the crossing. When asked about the statement, witness said he would have put anything in it; that he did not write the statement himself, but signed it after it had been written.

On behalf of defendant a switchman testified that as the train of 14 cars approached Division street it stopped just east of the east gate; that he opened the easterly gate; that another member of the crew went across the street

and opened the westerly gate; that witness took a position on the east side of the street, and could view the street as far as he could see; that he looked northward, and also saw that Russell, the other man, was on the west side in a position to view traffic coming from the south; that he gave the signal to proceed and was himself facing south; that he saw an automobile approaching Division street; that he waved his lantern, but that the machine came, hugging the east curb of the street, to within about a car length, or sixty feet, then turned to the center of the street, pointing northwest; that he swung his lantern and moved to get out of the way of the machine; that he gave a violent stop signal which was answered immediately; that the crash came at the east rail of the east street car track; that the train moved about 15 feet after it struck, but when it struck the train was moving not more than 3 miles per hour; that the machine was making a tremendous noise; that the collision occurred at a point where the right wheel of the machine was about 6 inches to the east of the easterly street car rail and about 3 feet north of the northerly rail of the railroad.

There was other testimony that the brakeman, or switchman carried a light to the west side of the street, and that there were two lights on the south side of the street, one of which was taken over to the west side. Photographs taken soon after the collision were introduced before the jury.

Arthur C. Spencer and J. F. Reilly, both of Portland, Or., and Hamblen & Gilbert, of Spokane, Wash., for plaintiff in error.

Chas. P. Lund, of Spokane, Wash., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). The plaintiff in error has argued that the judgment should be reversed for the reasons: (1) That Johnson was negligent; (2) that the negligence of the railway company, if any, was not the proximate cause of the death of Johnson; (3) that the driver of the automobile was negligent.

[1] It is said that Johnson was negligent because he was familiar with the crossing, had opportunity to observe the train moving, knew the speed of the machine, and that, although he gave no warning, he must have seen the string of box cars in ample time to have given warning to the driver, and thus the collision might have been avoided. Granting that upon the trial of the facts there was force in such an argument, the difficulty with it now is that it is built upon inferences which plaintiff in error draws from the testimony, but which are entirely at variance with those which the jury must have made and which are by no means unreasonable. There is direct evidence that the machine was headed directly north, and Ray, the driver, said that at about the time of the collision, and not before, he saw the box car, and "it seemed like a light came around the corner of the car." He is corroborated by a witness, who said that the machine was headed directly north, and the car "was right into it." Accepting it, therefore, that the automobile was pointed north, it is fair to say that there was no attempt to swerve around the car, and naturally, if no such attempt was made, the most reasonable explanation is that the cars were shoved out just as the automobile went upon the track, and that the machine was caught at a point east of the middle of the driveway between the east curb and the east rail of the street car

line. An additional circumstance in support of this view is the evidence that the wind shield was broken, and that broken glass was found on the north side of the track, about 8 or 9 or 10 feet from the east curb of the street. In this connection we have carefully considered the evidence of the mathematical measurements taken by the railroad company after the accident. They are helpful to a better understanding of the exact relation of fixed objects, but they do not necessarily refute the testimony of the witnesses for the defendant in error as to the positions of the automobile and the car just at the time of the collision. The whole situation presented a pure question of fact for solution by the jury in the analysis of the testimony, and as it was their exclusive province to determine what was the truth, it is not for this court to overthrow their conclusion. It is very clear that if the box car came as Ray said it did, and no signal was given, Johnson cannot be held as a matter of law to have failed to exercise ordinary care. Allison v. Chicago, Milwaukee & St. Paul R. Co., 83 Wash. 591, 145 Pac. 608; 22 R. C. L. p. 973.

[2, 3] It is urged that, even if the railway company was negligent, such negligence was not the proximate cause of the accident. The reasoning of the plaintiff in error is that Johnson failed to look or listen, or to warn Ray, the driver, of possible danger, and therefore his conduct was equivalent to acquiescence in negligence of the driver, and thus the negligence of Ray became the negligence of Johnson. But again the question of what was the exact situation was for determination by the jury. Of course, the track itself was a danger signal, and it was the duty of Ray to approach the crossing with his machine under control, and to keep a vigilant lookout for any train that might be approaching, and it may be said that it was the duty of the deceased also vigilantly to look for an approaching train, and, if he saw one, or in the exercise of ordinary care could have seen one, coming, and failed to give any warning to the driver, he would be guilty of contributory negligence, which would bar a recovery. But there is substantial evidence to the effect that the train was not visible until just the instant before the collision, and that there was no warning light given, and no intimation that a train was coming. There is the evidence that Ray was proceeding at a moderate rate of speed, with the automobile under control, and, there being nothing whatever to show that Johnson saw the train before Ray did, we think it but reasonable to infer that the train was not seen by Johnson or Ray, and hence that there was no opportunity to stop the automobile in time to avoid the collision. Southern Pacific Co. v. Wright, 248 Fed. 261, 160 C. C. A. 339.

[4, 5] The District Court was correct in charging the jury that the negligence of the driver of an automobile is not as a matter of law imputed to one riding with him as a passenger or guest, but nevertheless that one riding as a passenger or guest may not place his safety entirely in the keeping of the driver, but that he must exercise due and reasonable care for his own protection and safety. Brabon v. Seattle, 29 Wash. 6, 69 Pac. 365; Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652.

[6] Plaintiff in error argues that a mathematical computation would demonstrate accurately the respective positions of the front car and the automobile at the instant preceding the accident. Upon the premise that the version of plaintiff in error is correct, the argument is sound. But the jury did not accept as accurate the testimony which was given as to the positions shown on the exhibit introduced by the plaintiff in error. Nor were they obliged to take it as true, for it was in conflict with the evidence given by the witnesses for the defendant in error. From their testimony there was ample ground for the belief that, if the car which hit the automobile had been within the zone of the headlights of the automobile, the inmates of the automobile would have seen the car in time to avoid the collision, even though it had been pushed out into the street without any warning on the part of the employés of the railroad company.

[7, 8] It is said that the court erred in refusing to give an instruction, requested by the plaintiff in error, to the effect that the railroad company had the same right to the use of Division street at the place of the accident that the public had. Undoubtedly the railroad company and the public had reciprocal rights with respect to the use of the street; but, as explained, the crossing was over a thoroughfare in the city, and it was the duty of the railroad company to give adequate notice by warning or signal of the approach of the train. The court clearly defined the obligation resting upon the railroad company, as well as the duty which devolved upon those in the automobile, and made plain the general proposition included in the instruction to which the plaintiff in error objects.

We find no error, and affirm the judgment.

Affirmed.

